Hart *v.* Skinner.

---

JONATHAN HART *v.* SAMUEL S. SKINNER.

Where the defendant borrowed a carriage of the plaintiff to use in a particu-
lar place, and sent it heavily loaded to another place, whereby the car-
riage was damaged, it was held such a conversion as would entitle the
plaintiff to recover the value of the carriage in an action of trover.

If the taking of property be wilful, or if the property be essentially injured,
and an action of trover be commenced, the defendant cannot compel the
plaintiff to receive back the property in mitigation of damages.

It would seem to be a well settled rule in the English courts, in actions of tro-
ver and trespass *de bonis asportatis*, that when the taking was not wilful,
and the property is not essentially injured, and is tendered back, the plain-
tiff will, on payment of costs, be compelled to discontinue his suit, or pro-
ceed at his peril as to costs. REDFIELD, J.

But the granting such rule is discretionary with the court, and, to be available
in taxing costs, must be specially applied for and obtained in advance.
*Per* IB.

The statute of this State, allowing a tender to be made in all civil actions at
 any time more than three days before the term at which the writ is made
returnable, applies only to cases in which a tender might have been made,
before suit brought, without the aid of the statute. It does not apply to
actions of trover.

TROVER for an Omnibus. Plea, the general issue, and trial by
jury. On trial the plaintiff proved that he was the owner of the
carriage in question, which was one suitable to be drawn by two
horses; that, on the 16th day of March, 1842, he let it to the de-
fendant, to be used in the village of Burlington, and not to be run
out of that town; and that, on the morning of the 17th of March,
1842, the defendant, without the knowledge or consent of the plain-
tiff, caused the carriage to be sent to Jericho, a distance of twelve
miles from Burlington, with two pair of horses attached to it, and
heavily laden; and that the carriage was injured in several places
by means of such usage and overloading.

The defendant proved that, on the morning of the 18th of March,
1842, he caused the carriage, in its damaged state, to be returned
to the stable of the plaintiff, who declined receiving it,—but it was
left there. That, subsequently, he proposed to the plaintiff that he
would get the carriage repaired, and said that, if there should be

Hart *v.* Skinner.

any further damage, he would pay it, and that the plaintiff replied that he might do as he chose about getting it repaired; but that he, plaintiff, should not agree to take it back. That the defendant did cause it to be repaired, and, within eight or ten days from said 16th of March, again returned it to the premises of the plaintiff, where it was suffered to remain, no one interfering therewith. The defendant's testimony tended to prove that the carriage was thoroughly repaired, and that it was worth as much, after it was repaired, as it was when he received it. The plaintiff's testimony tended to contradict this.

It was conceded, on trial, that, after this suit was commenced, and more than three days before the term of the Court when the writ was made returnable, the defendant tendered to the plaintiff fifteen dollars in satisfaction of all damages, and what costs had then accrued, which the plaintiff refused to receive; and that the defendant had been ever since ready to pay the same, and brought the money into court.

The court charged the jury, in substance, that the testimony showed such a conversion of the carriage by the defendant, as rendered him liable for its value; that, if the plaintiff received back the carriage, whether before or after it was repaired, it should go in mitigation of damages, and not as an entire bar of the action; but that the defendant had no right, in this case, to *compel* the plaintiff to receive back the carriage, even after it had been repaired, in mitigation of damages. The jury were also told that the tender of the fifteen dollars was no bar to the action.

The jury returned a verdict for the plaintiff for the value of the carriage. Exceptions by defendant.

*Hyde & Peck* for defendant.

The gist of the action in trover is the tortious act of the defendant, which constitutes the conversion; and, as the conversion does not vest the property in the defendant, the recovery, which sounds in damages, is limited to the extent of the injury the plaintiff has sustained by such tortious act. *Brunsdon* v. *Austin*, Tidd's Pr. 571. 6 Bac. Ab. 708. *Shotwell* v. *Wendover*, 1 Johns. 65. 6 Bac. Ab. 483—4. *Pickering* v. *Truste*, 7 T. R. 53. *Catling* v. *Bowling*, Sayer 80. *Earle* v. *Holderness*, 15 E. C. L. 41.

*Cook* v. *Hartle*, 34 E. C. L. 528. Though, ordinarily, where the plaintiff at the commencement of the action has been entirely deprived of the property, the value at the time of the conversion satisfies this rule, yet, if it appear that such value is not commensurate with the injury, the jury may give more or less, according to circumstances. The conversion in this case was temporary, and not permanent. 2 Stark. Ev. 1156. Stark. Ev. 165. *Davis* v. *Oswell*, 32 E. C. L. 744. 6 Bac. Ab. 129. Bul. N. P. 46. 12 Mod. 441. *Ross* v. *Fuller et al.,* 12 Vt. 265.

The return of the property after conversion, and before action, was admissible in evidence in mitigation of damages. 2 Phil. Ev. 234. Bul. N. P. 46. 6 Bac. Ab. 629. 3 Stark. Ev. 1167—8. *Wheelock* v. *Wheelwright*, 5 Mass. 104. This rule is no where laid down with the qualification that an acceptance by the plaintiff is necessary. HOLT, CH. J., (See Jac. Law Dict. Tit., Trover,) says, "if the defendant tender the goods, and the plaintiff *refuse to receive them*, that will go only *in mitigation of damages,*—not to the right of the action of trover, for the plaintiff may have that still." *Reynolds* v. *Shuler,* 5 Cow. 323. *Plevin* v. *Henshall et al.,* 25 E. C. L. 17. *Baldwin* v. *Porter*, 12 Conn. 473. *Murray* v· *Burling*, 10 Johns. 172. *Shotwell* v. *Wendover*, 1 Johns. 65. *Hayward et al.,* v. *Seaward et al.,* 28 E. C. L. 269. *Irish* v. *Clayes et al.,* 8 Vt. 30.

There is no distinction between a conversion by taking, or using, and a conversion by a refusal to deliver. A taking, or using, is no conversion, unless wrongful; the same is true of a refusal. *Irish* v. *Clayes et al.,* 8 Vt. 30. To avoid the right of the defendant to wage his law, the action of trover has superseded the action of *detinue*, in which action the defendant recovered, in the alternative, the goods and damages for the detention, or, in default of a restoration of the goods, the value together with such damages; and, in analogy to the action of detinue, the recovery in trover, when the goods have been returned before action, is limited to the damage for the injury and detention.

The tender should have been received. In the Rev. St., pp. 470—1, § 4, where provision is made for a tender of confession, the words "debtor," "creditor," "debt," "obligation or account," are made use of; but in the sixth section the phraseology is

Hart *v*. Skinner.

changed, and provision is made, that, "at any time after the commencement of *any civil action* to three days before the setting of the court, the defendant may tender" &c. The words *"any civil action"* embrace all suits between party and party, and the word "demand" is equally comprehensive, including every thing for which an action can be brought.

At common law money may be paid into court in trover, after which the plaintiff proceeds at the peril of liability for costs. *Cook v. Hartle,* 34 E. C. L. 528.

*J. Maeck* for plaintiff.

1. The statute, [Rev. St. p. 471, § 6,] has been repeatedly held to extend only to those cases where the party may tender at common law. It is only in cases of contracts that the party is permitted to make a tender by the rules of the common law ; and not even in such cases, if the damages are uncertain. Tidd's Pr., c. 26, and cases there cited.

2. In actions of trover the defendant is not permitted to bring the goods into court, nor to show a restoration of them in mitigation of damages, unless the plaintiff accept the goods, or unless the action be for money. Bac. Ab., Tit. Trover, No. 9. Str. 142. 12 Mod. 397. *Bowington* v. *Parry*, Str. 822. *Olivant* v. *Perineau*, Str. 1191. *Catling* v. *Bowling*, Sayer 80. *Harding* v. *Wilkins*, Sayer 120. *Whitten et ux.* v. *Fuller*, 2 Bl. 902. *Olivant* v. *Berino*, 1 Wils. 23. *Shotwell* v. *Wendover*, 1 Johns. 65. Certainly not, if he have been guilty of wilful wrong in the conversion, or if he cannot restore the property in as good situation as it was in when he received it, and such inability have been caused by his own wilful act. *Fisher* v. *Prince*, Burr. 1363. B. N. P. 49. Selwyn's N. P. 1178. 7 T. R. 53. And it is a matter within the discretion of the court below, of which they must judge from all the circumstances of the case.

The opinion of the court was delivered by

REDFIELD, J. In regard to the right of the defendant in actions of trover and trespass *de bonis*, in the English courts, at the present day, to surrender the property taken, *in specie*, in mitigation, or, in many cases, in satisfaction of damages, there can be no manner of

doubt.   How this right has grown into its present constant use, in these forms of action, it may not be necessary minutely to inquire; although it would, I apprehend, be not wholly void of interest to the student to examine the process by which the courts of that country continue to mould and modify the arbitrary and cumbrous formulas of the common law procedure, so as to meet the absolute justice of the complex and multiform incidents and relations to which, in the way of business, the greatly extended and multiplied facilities of modern commercial intercourse have given rise.

While the action of detinue continued in use, no such right of return was allowed in trover or trespass, except by consent of the plaintiff.   But after that action fell wholly into disuse, the courts were almost constantly pressed to receive the surrender of the thing, for the taking or conversion of which damages were claimed,—the same as had been practised in the action of detinue.    And feeling, perhaps, the convenience and justice of such a course, they felt called upon to tax their ingenuity, not to say invention, to find some good excuse for the refusal which they had predetermined.   The absurdity of the reason, as in many other cases, served but to show more clearly the fallacy of the conclusion.   They answered that " they did not keep a warehouse," and so could not order a surrender of the property, except in the case of money *in numero ;* one would think the fact that they did not keep a *bank* would be *as* good a reason why they should not receive *money.*

But it seems soon to have been perceived that, in making *this* concession, they had yielded the whole ground.   Accordingly, (very soon,) the same rule was extended to pictures, and other goods not cumbrous, or perishable.   This was the case as early as the middle of the last century; Buller's N. P. 49 ;—which *is a book of extra*ordinary authority, as well as accuracy, in regard to the state of the law at the time it was written, and indeed contains the most authentic reports of many of the early cases.   6 Bac. Ab. 483, 484, 708, —which is a very accurate digest,—recognizes the same principle in regard to all cases of trover, when there is no ground to claim special damage, and no wilful misconduct on the part of the defendant.   The rule seems finally to have been first established in the King's Bench in *Fisher* v. *Prince,* 3 Burr. 1363, where Lord MANSFIELD takes occasion to be somewhat facetious, if not severe,

in regard to the former practice.    His Lordship seems to me, in that case, to put the matter upon the true ground.    " Such motions ought neither to be refused nor granted *of course;* they must depend upon their own circumstances.    No injury is done the plaintiff, if the court should think he ought not to proceed for damages beyond the specific thing, because he may still proceed for more, *at the peril of costs;* and so he ought."    " But," says his Lordship, " in this particular case, the goods are *altered* and their *value changed."* The same rule was, by a very able court, extended to the case of goods taken by way of trespass, where the defendants, officers of the excise or revenue on leather, *by mistake,* made the seizure and where the goods had suffered no damage.    *Pickering* v. *Truste et al.,* 7 T. R. 54.    The same rule seems to have been recognized as the settled law in Westminster Hall, in *Earle* v. *Holderness,* 15 E. C. L. 41, and *Cook* v. *Hartle,* 34 E. C. L. 528.

We do not think our statute, allowing a tender to be made in all actions until three days before the term of the court, can be made to reach this class of cases.    That statute has been considered as extending only to those cases in which a tender might have been made before suit brought, without the aid of the statute.    It was, in *Powers* v. *Powers,* 11 Vt. 262, considered that ejectment on mortgage did come within that statute, as the action was *actually* for the recovery of the money.

But we know no reason why the right to costs, and the extent of costs to be taxed, is not as much under the control of the courts in this state as in England.    This principle seems to have been recognized in *Clark* v. *Rice,* 6 Vt. 33.    The fact, too, that we have no statute giving costs, as of right, to the recovering party, would seem to favor this view.    The only provisions in our statute, which now occur to us, in regard to the recovery of costs, are, where the plaintiff abandons his suit, or it is abated for want of jurisdiction in the court,—and here the court are to allow *reasonable costs.*    Costs, too, it is well known, were not recoverable at common law.    The right, therefore, of the prevailing party to recover his costs rests upon an English statute, early adopted into our practice by statute, and not discontinued with the repeal of that statute.    It is not very obvious, then, why the court should not have the same discretion here, in allowing or refusing costs, which is exercised by the

courts in England. There it is every day's practice for the defendant to pay money into court, (which had not been previously tendered,) under a rule that the plaintiff accept the same and discontinue his suit, or proceed at his peril as to costs. This sum, paid into court, is supposed always to cover the costs already accrued, and a specified amount of debt, or damage.

I am not prepared to say that this practice obtains in trover, or trespass *de bonis*, where the taking was wilful, or where the thing has been essentially injured. This court think such a rule could not be allowed in either of the last named cases. In the present case,

1. No rule was moved for. That should always be the case. The matter rests primarily in the discretion of the court, before whom the trial is had. Whether that discretion is absolute, and arbitrary, it is perhaps not necessary now to inquire. Most matters of discretion now, *occurring in the course of a trial*, are considered subject to revirsion in the court of errors. The interest of witnesses, and the loss of original papers, so far as they depend upon *facts*, are not subject to revision ; but the facts being conceded, an erroneous determination of the county court may be revised in this court. So, too, in regard to the challenge of jurors. But here no rule was moved for.

2. The abuse of the thing loaned, or hired, and which constituted the conversion, that is, the putting it to a *different use* from that for which it was hired, which always amounts to a conversion, must have been wilful ;—there could have been no mistake in the matter.

3. The thing was essentially injured. The fact that it was repaired shows that it must have been out of repair. And the defendant's causing these repairs to be made shows that he considered himself the cause of the damage.

In this particular case, as says Lord Mansfield, in *Fisher* v. *Prince*, the thing has been altered, its value changed, and it was not taken and put to this use *by mistake*, as in the case of *Pickering* v. *Truste*.                    The judgment is affirmed.