## The Rutland and Washington Railroad Company *v.* The Bank of Middlebury.

*Trover. Effect of return of property sued for to plaintiffs, and the power of courts to make an order to that effect. Railroad bonds. Damages.*

The county court has the power, in an action of trover, to permit by order the return of the property alleged to have been converted, in mitigation of damages, and, on payment of costs by the defendant, to order that the plaintiff shall thereafter proceed at his peril as to subsequent costs.

This power, though its exercise in proper cases is discretionary with the Court, can not be used when the defendant has acted wilfully in taking or keeping the property, when the property has deteriorated, or when its value is in dispute.

The mere fact, however, that the plaintiff claims damages, either general or special, beyond the value of the property, does not render it improper to make such an order.

The plaintiffs, a railroad company, deposited with the defendants certain of the former's mortgage bonds, payable to bearer, to be held by the defendants, upon the performance of a certain condition, for a specified purpose. This condition was not performed, but the defendants, in good faith, claimed to hold the bonds for another purpose, and refused to surrender them on demand. These bonds were never worth above par, but, after their conversion by the defendants, they greatly depreciated in market value. The plaintiffs brought trover for the bonds, alleging in their declaration in addi-

tion to general damage, that they had, by the conversion, been deprived of the means of negotiaing them, and had been put to expense in raising funds to relieve their property from attachment. Before trial the defendants offered in Court to deliver the bonds to the plaintiffs and pay them their costs already accrued and the County Court made an order allowing them to bring such bonds and costs into Court for the plaintiffs and that if the latter refused to receive them they must proceed at their peril as to subsequent costs, unless they succeeded in recovering more than nominal damages above the face of the bonds. *Held*, that the case under such circumstances, was one proper for the exercise of the power of the Court to make such an order in their discretion.

*Held, also,* the defendants having complied with this order, and the plaintiffs having refused to accept such compliance as a satisfaction of the suit, but having proceeded to trial, and proved no facts materially different from those appearing when the order was granted, that they were entitled to recover only nominal damages.

TROVER for the conversion of ten of the mortgage bonds issued by the plaintiffs for one thousand dollars each, dated October 1st, 1852, and payable to one Eastman, or bearer, October 1st, 1867, with interest payable semi-annually, at seven per cent. per annum. The writ was returnable at the March Term, 1855, and the declaration consisted of three counts, the first of which claimed merely a general damage of twelve thousand dollars. The second count alleged that the plaintiffs had been, by the conversion complained of, deprived of all benefit which would have accrued to them by the bonds in question, and which they would otherwise have acquired from their use and negotiation, viz : to the full amount thereof. The third count contained a similar averment of damage to that in the second count, and also alleged that by means of such conversion the plaintiffs had been put to great expense in raising funds for their necessary use, to wit: the sum of fifteen thousand dollars to relieve their property from attachment and sale.

The defendants pleaded the general issue and the cause was partially tried by jury at the September Term, 1855, and continued. At the March Term, 1857, a full trial by jury was had and a verdict recovered by the plaintiffs for nine thousand dollars, and the cause was reviewed by the defendants. After this verdict and review, the defendants, for the first time in the case, offered to restore the bonds in question to the plaintiffs, and to

R. & W. R. R. Co. *v.* Bank of Middlebury.

pay them their costs already accrued, and moved for a rule that the plaintiffs' costs be taxed, and that upon the surrender of the bonds by the defendants in court and the payment of the plaintiffs' costs all further proceedings on the part of the plaintiffs be perpetually stayed.

Upon this motion a hearing was had, KITTRIDGE, J., presiding, and each party introduced evidence in the form of affidavits substantially the same as the matter proved and offered to be proved at the subsequent trial of the cause, as hereinafter detailed. The county court ordered that the plaintiffs' costs be taxed and that the defendants have leave to deliver into court the ten bonds in question, and also to bring into court the amount of the plaintiffs' costs, and that if the plaintiffs would accept such bonds and costs in discharge of the action, all further proceedings in the cause should be stayed; but that, if the plaintiffs should refuse to accept them in discharge of the action, and should proceed to the trial of the issue in the cause, the damages which should be recovered by them should be subject to be reduced by the amount of the *prima facie* liability of the plaintiffs for the payment of the money specified in the bonds; and in case the damages recovered by the plaintiffs should not after being so reduced amount to more than nominal damages, the plaintiffs should recover costs against the defendants, incurred subsequent to the delivery and payment into court of the bonds and costs as above mentioned, and the defendants should recover their costs incurred during the same term. To this order the plaintiffs excepted.

The defendants at the same term complied with this order by bringing the bonds into court and depositing them with the clerk, together with the plaintiffs' costs up to that time; but the plaintiffs refused to receive them in discharge of the suit, and they remained in the clerk's custody. The cause was continued from term to term until the September Term, 1859, when it was again tried on the merits by jury, ALDIS, J., presiding.

The testimony of the plaintiffs tended to show that in 1853 the plaintiffs were indebted to the defendants in two drafts of $5000 each, the first payable in September, the second in October, 1853; that the defendants, in November, 1853, com-

42

menced a suit upon the drafts and attached the property of the plaintiffs ; that the plaintiffs applied to the defendants to discontinue the suit, and to renew the discount, and proposed to the defendants to substitute new drafts for the old ones, and to deposit with the defendants ten second mortgage bonds of the plaintiffs of $1000 each (being the same described in the declaration,) for the defendants to hold as collateral security for such *new* drafts ; that upon the expectation that the defendants would accept such proposal, the plaintiffs, on the 15th December, 1853, sent to the defendants the ten bonds ; that these bonds were deposited with the defendants merely as collateral security for the new drafts which the plaintiffs proposed to substitute for the old ones ; that the new drafts so intended for the renewal of the old were sent to the defendants on the 31st January, 1854 ; that the defendants finally refused to renew the old debt, or to take the new drafts in place of the old ones, or to discontinue the suit commenced upon the old drafts ; and that before the commencement of this action the plaintiffs demanded the bonds of the defendants, who refused to surrender them : that the defendants, pursuant to the order of court, at the September Term, 1857, already recited, surrendered into court, for the use and benefit of the plaintiffs, the ten mortgage bonds described in the declaration, and left them with the clerk of the court for the plaintiffs ; that the bonds had ever since remained, and still were, in the custody of the clerk, (and they were, at the request of the defendants, on the trial produced in court by the clerk to be delivered to the plaintiffs,) that the defendants, at the September Term, 1857, had procured the plaintiffs' costs up to that time to be taxed under the order of the court, and had, at the same term, left the amount of the costs so taxed with the clerk of the court, for the plaintiffs ; and that the plaintiffs, both at that term, and ever since, had wholly refused to accept both the bonds and costs.

The defendants introduced testimony to show that they supposed in good faith that the bonds were deposited with them as collateral security for their claims against the plaintiffs then overdue, and that it was for this reason they declined restoring them to the plaintiffs until the latter had cancelled their obligations to the plaintiffs.

The defendants insisted that the plaintiffs were entitled to recover only nominal damages, and admitted that upon the plaintiffs' showing, and upon the order and the surrender of the bonds, the plaintiffs were entitled to nominal damages, but without costs.

The plaintiffs insisted, first, that they were entitled to recover the amount due upon the bonds, or if not that amount, then, secondly, the value of the bonds, as they could have been sold in the market for cash at the time of the conversion; and for this purpose offered to prove that at the time of the conversion the bonds were worth, and could have been sold for cash, at prices varying from ninety cents on the dollar to nearly par, but did not claim that at the time of conversion, or since, they had been worth more than their par value. The defendants objected to the admission of this evidence.

The court held that by virtue of the former order of the court, and by the delivery and production of the bonds in court for the use of the plaintiffs, the plaintiffs, on account of their liability to pay the bonds, could recover as damages only a nominal sum, and excluded the evidence offered by the plaintiffs, to which decision the plaintiffs excepted.

The plaintiffs then offered to show that at the time of the conversion they were indebted to the Bank of Ogdensburg in about the sum of twenty thousand dollars; that the Bank of Ogdensburgh had agreed to take second mortgage bonds of the plaintiffs in payment upon the debt, and that they could then have used these bonds to pay upon their debt to that bank; that the plaintiffs applied to the defendants for these bonds, and told them of the use to which they wished to apply them, but the defendants refused to deliver them to the plaintiffs; that these bonds were the only ones within the control of the plaintiffs which they could procure; that the Bank of Ogdensburgh commenced a suit against the plaintiffs upon their debt, and attached the plaintiffs' property, and that the plaintiffs had been obliged to pay out, nearly five thousand dollars over and above their debt, to the Bank of Ogdensburg in order to relieve their property from the attachment. To the admission of this evidence the defendants, objected, and it was excluded by the court.

The plaintiffs also offered to show that they had necessarily

expended for counsel fees and other expenses of this suit the sum of one thousand dollars, before the defendants offered to surrender the bonds into court. This evidence was also objected to by the defendants and excluded by the court.

The plaintiffs also offered to show that they could not build and carry on their railroad without making a mortgage to raise money; that the mortgage by which these bonds were secured covered all the real and personal estate of the company, and while it was outstanding the plaintiffs could not raise money upon a subsequent mortgage ; that the use of these ten bonds was valuable to the plaintiffs in raising money to prosecute their business under their charter, and that the plaintiffs, for want of the money which they could have obtained from the sale of these bonds, had sustained damage generally. But the plaintiffs in this connection did not offer to show any special instance of damage except the damage which they claimed to have suffered in the case of their debt to the Bank of Ogdensburgh. This evidence was also objected to by the defendants and excluded by the court.

The plaintiffs then claimed that upon their evidence admitted by the court, they were entitled to more than nominal damages. But the court decided that there was no evidence in the case upon which the plaintiffs would be entitled to recover any exemplary damages, and instructed the jury that the plaintiffs were only entitled to recover nominal damages. The jury thereupon signed a verdict for the plaintiffs for nominal damages. To the decisions of the court in excluding the evidence offered by the plaintiffs, and directing the jury to return a verdict for nominal damages only, the plaintiffs excepted.

*Linsley & Prout* and *E. J. Phelps*, for the plaintiffs.

*Geo. F. Edmunds* and *Briggs & Nicholson*, for the defendants.

BARRETT, J.   I. As to the power of the court to permit, by order, the return of property in mitigation of damages, &c.

That such a power is assumed and exercised by the English courts of common law was very properly admitted by the learned counsel for the plaintiff, in view of the reported cases in

which the subject is involved. The subject came under the consideration of this court in *Hart* v. *Skinner*, 16 Vt. 138, and the fact of such a power and of its exercise was clearly evolved and asserted as matter of settled law in Westminster Hall.

In the case of *Yale* v. *Saunders, et al, Ib.* 243, WILLIAMS, Ch. J., says: "Indeed courts may, on motion of the defendant, order a return of goods in some cases against the wishes of the plaintiff, and such return will reduce the damages to those actually sustained in consequence of the wrongful taking. This was decided at the last term of this court in Chittenden County," referring to *Hart* v. *Skinner*. This must be regarded as a recognition of the power as incident to, and residing in, a common law court as well in this country as in England.

In 2 Hill, 132, COWEN, J., says : "It is quite common for the court to make a rule stopping the action on a re-delivery, and payment of costs." This power would seem to be of the same character as that which is so commonly exercised, of permitting, by order, money to be paid into court after the day of tender has passed. In actions of trover its exercise is but a mode of attaining an end, as between the parties, analogous to the permitting to be shown in mitigation of damages, that the property converted has come back to the possession and use of the plaintiff, or has been applied by some third person, or by operation of law to the plaintiff's benefit. See 6 Mass. 20. 24 Wend. 379. The purpose is to invest the plaintiff with all the legitimate fruits of his action, by making him whole in respect of the property for the conversion of which he has brought his suit, with just costs.

We feel fully warranted, now that the point is directly presented, in holding that the county court has the power, as incident to its character as a court of common law jurisdiction and authority to permit, by order, the return of the property sued for in mitigation of damages, and, on payment of costs, to order that the plaintiff thereafter shall proceed at his peril as to subsequent costs.

II. It is next to be considered whether the present is a proper case for the exercise of that power.

As matter of course its exercise would not be proper, when it would result in depriving the plaintiff of full reimbursement for

the damage caused by the conversion, as depending on the value of the property, nor when the conduct of the defendant in the taking and use of the property should be such as to disentitle him to be favorably regarded by the court.

Though it is said in *Rogers* v. *Crombie*, 4 Greenl. 236, by MILLER, Ch. J., that the motion for such an order "must be considered as addressed merely to the discretion of the Judge, and, of course, one upon which his decision is final;" still it is undoubtedly true that there are well established rules by which it is to be determined whether the particular case is a proper subject for the exercise of that power by the court. If the case should fall within the rules, then, undoubtedly, the exercise of discretion by the Judge, in determining whether or not to grant the order when applied for, would be final, and not subject to revision on exceptions.

Lord MANSFIELD, in *Fisher* v. *Prince*, 3 Bur. 1363, indicates the ground and the outline of the rules that have become established on this subject. They are substantially embodied in *Hart* v. *Skinner*, cited *supra*, and are well stated in a learned note by the Reporter to the case of *Yale* v. *Saunders*, cited *supra*, in which note the English cases are referred to and collated.

With a slight modification the rules on this subject were well and comprehensively stated in the argument by the learned counsel for the plaintiff. And it is to be remarked that the defendant's counsel proceeded in the discussion of the case upon a recognition of these rules, claiming that the present case falls within them.

In many cases the courts have declined to exercise their power in this respect,—not because the power was lacking, but because the case was either excluded by the rules of law, or it did not commend itself to favorable regard. The case of *Tucker* v. *Wright*, 13 E. C. L. 64, is in point for illustration. In it the power of the court was recognized, but its exercise was denied. It was a motion for obtaining a *stay of proceedings* on bringing certain cloth into court and paying the costs. The whole matter of damage was open, and involved the question of the identity as well as of the deterioration of the cloth, and of the injury resulting from its detention. In the language of Sergeant Wilde in

R. & W. R. R. Co *v*. Bank of Middlebury.

opposing the motion for the rule, "there was a complicated dispute between the parties, and the value of the cloth was not ascertained." Of course, an order for a stay of proceedings would have been a summary way of ending a complicated dispute ; as to which, I think, Ch. J. BEST was well warranted in saying, "such a motion was never made before."

A distinction is to be taken between cases in which the motion is for an absolute stay of proceedings upon the redelivery of the property and payment of costs, and those in which the motion is that upon the redelivery of the property and payment of costs, the plaintiff shall thereafter proceed at his peril.

When the property is of a fixed value, and from its nature cannot be the subject of deterioration, then, though the plaintiff may claim damages beyond the value of the property, either in the character of general or special, the order may be made as was done in this case.

In *Gibson* v. *Humphrey*, 1 Cr. & Me. 544, the motion was for an absolute stay of proceedings. It was properly denied, for the reason that there was contention as to the value of the property, as well as to the necessary consequential damages. This would constitute a good reason why such an order as that in the present case should not be made.

The remarks of the learned Barons were directed to the very motion before them ; and, of course, the order would not be granted where its effect would be to cut off the plaintiff from prosecuting his legitimate claim for damage, whether it was to be measured by an estimated value of the property, or accruing by reason of the unlawful detention of it. This distinction is clearly marked in a note, by the editor, to that case, as follows : "The delivery of the property in question in an action of trover is no bar to the right to recover costs and special damage, (citing *Rank* v. *Rank*, 5 Barr 211.) But where no special damages are claimed, the court may *stay proceedings* on the restoration of the property uninjured, and payment of costs," (*citing Tracy* v. *Good*, 3 Penn.)

This distinction reconciles the seeming incongruity in the cases, and in the language of the judges in passing upon the questions before them.

The case of *Fisher* v. *Pyne*, 39 E. C. L. 437, was a different proceeding, but bearing some analogy, perhaps, to a stay of proceedings on the bringing in of the property and paying the costs in an action of Trover. So far as it bears such analogy, it seems to have proceeded on the same reason ; and the order was denied on two grounds, one of which was that the subject of damage was open and unliquidated.

In the present case it appears that the bonds sued for came lawfully into the possession of the defendants, and were held under a claim of right, in respect to which we do not discover any lack of good faith. So far, then, the case is not outside of the rules of law: It is to be inquired then, whether the value of the property has depreciated. However this might have been in respect to a third person as owner and holder of the bonds, it is difficult for us to see how it can be so as to the plaintiffs.

Whatever they are intrinsically worth, depends, primarily, on the liability of the plaintiffs to pay them. They are designed to constitute a negotiable indebtedness of the railroad company, the value of which to the company, prior to being negotiated, does not consist in the fact of an existing indebtedness which it can convert into money, but in the fact of their being a means of obtaining a temporary use of money upon the stipulations and securities contained in the bonds themselves.

In the hands of a third person, lawfully holding them, they are of value by reason of the liability of the company to pay them according to their terms. When that liability ceases, the bonds cease to be of value or the representative of value. Before negotiation they have no value, because no liability on the part of the company to pay has become attached to them. After having been negotiated, when again they shall have come lawfully into the hands of the company, they will stand the same in respect to value as they were originally before negotiation. Whatever, therefore, they are intrinsically worth, either in respect to the material of them, as printed and written paper, or as instruments of contract, remains the same to the company whenever they are lawfully in its hands without payment. Indeed, it is very difficult to apprehend and appreciate the idea of deterioration in value to the company of its own liability to pay. In respect to

third persons, in favor of whom such liability has accrued, it is quite easy to understand.

So far, then, as the damages are to be measured by the value of the property, the restoration of the bonds to the plaintiff would reimburse them. If the plaintiff has been further damnified, it is by reason of the detention of the bonds by the defendant; and that, not by reason of the use to which the bonds have been put by the defendant, either working an injury to the property itself, or yielding a benefit to the defendant for which the plaintiff is entitled to be compensated; but it is purely in the nature of *special damage*, accruing by reason of the plaintiff having been prevented from using the bonds for legitimate and beneficial purposes.

In respect to such damages the rule is well understood, requiring them to be specially averred, in order to entitle them to be recovered in any form of action. For present purposes it is not necessary to decide whether *special damages* may or may not be recovered in this form of an action. It is enough to say that they cannot unless specially averred. Now, within any precedent or rule promulgated in the books, it seems quite clear that special damage is not so averred in this case as to entitle the plaintiff to give evidence of it on the trial. Upon the views thus taken, we are satisfied that this case, as it was before the county court, presented warrantable grounds for the exercise of the power of the court to order, that upon the production of the property and the payment of the costs by the defendants, the suit should thereafter proceed at the peril of the plaintiff as to costs. We have no occasion to criticise the details of the order, inasmuch as it results in giving the plaintiff the right to proceed without prejudice for the recovery of any damage, general or special, which it might show itself entitled to, with full costs, in case it should succeed in showing any that was not reimbursed by the delivering up of the bonds.

'The consideration which we have thus given to the case, under the first bill of exceptions, sufficiently indicates that we think the county court committed no error in giving effect to said order on the trial, and permitting the bonds to be delivered into court to respond to the damages, so far as depended on the value of the bonds themselves.

But it is claimed that the plaintiff was entitled to recover other and further damage than the mere value of the bonds, and that the court erred in excluding the evidence that was offered and in directing the jury to return a verdict for nominal damages only.

Any damage that was the natural and necessary result of the conversion, the plaintiff would be entitled to recover under the general averment of damage. The case of *Hickock* v. *Buck*, 22 Vt. 149, is the type of a large class of cases, and illustrates the application of this rule in a case where the plaintiff was allowed to recover, not the value of the property, but a just compensation for the loss of the use of it, for a period during which he was entitled to the possession and use of it.

He was entitled by contract to the possession and use of the defendant's horse for a fixed period in the carrying on of a rented farm. He had taken the possession and was in the use of the horse under the contract. Before the term expired the defendant wrongfully took away and kept the horse. There the use gave value to the right of possession, and the loss of that use was the ground of necessary damage to the plaintiff. But in turning from that case to the present, can it be said that it has been both the natural and necessary result of the withholding of these bonds that the plaintiff has sustained actual pecuniary loss? If so, it is not obvious to us. If they had been lying in the plaintiffs' safe during the same period, they would have been fruitless of profit. If they had been afloat in market they would also have been fruitless of profit, for they would have borne with them the liability on the plaintiff not only ultimately to pay the principal, but currently to pay the interest at seven per cent. In order for them to have been a source of necessary profit, it should appear that the plaintiff would have commanded a premium upon them in excess of the current rate of accruing interest.

The most that can be claimed in behalf of the plaintiff for these bonds, is that they should be regarded as standing to the company instead of money, say bank bills; as a kind of special currency authorized by the legislature and the usages of business. Suppose the defendant had received and held a package of ten thousand dollars in current bank bills belonging to the plaintiffs, for which suit should be brought. They would measure their

R. & W. R. R. Co. *v.* Bank of Middlebury.

own value, and by their restoration the plaintiff would be reimbursed that value. · The remaining general damage would be the interest on the money during its wrongful detention. But in the case of these bonds, the plaintiff's liability to pay the interest just counterbalances the right that would accrue in respect to interest in the supposed case of the money.

We think it would not be claimed that the plaintiff would be entitled to recover, as *general* damage, for the loss he had sustained in not being able, for want of his money, to pay his pressing debts, or to avail himself of opportunities for profitable investment or speculation. Nor do we think it would be claimed that, as *special* damage, under any form or minuteness of special averment, such loss could be recovered, and for the obvious and cogent reason that it would be too contingent, remote and uncertain to be the subject of reliable estimate.

If in the supposed case of the detention of the money, the same conjuncture of affairs had occurred as was offered to be proved in respect to the debt to the Ogdensburgh Bank, we think the proof would not have been properly admissible under any averment in the present declaration, and as at present advised, we think it would not be under any declaration that could be made. But what seems to be specially noticeable in the present case, as distinguishing it from the one supposed, is, that in that case the appropriation of the money to that debt would have operated as a payment of it, while the use of the bonds for that purpose would only have shifted the form without diminishing the obligation or the amount of the plaintiff's indebtedness. This characteristic incident is not important perhaps, in the view in which the claim for damages was made on the score of the debt to the Ogdensburgh Bank. We think the evidence not admissible, irrespective of this feature of the case.

The proof offered as to counsel fees and expenses incurred in this suit, was properly excluded, because in no view could these expenses be regarded as in the nature of damages either general or special. They could be brought into consideration, if at all, only as operating upon the judge in exercising his discretion, upon the motion for the order as to the re-delivery of the bonds and payment of costs.

The offer of evidence as to the embarrassment caused to the plaintiff in prosecuting its business by reason of being deprived of pecuniary means of which it could have availed itself, if it could have had the use of the bonds, was also properly rejected, for the same reason, *à multo fortiori*, as that which justified the exclusion of the evidence of embarrassment produced in reference to the debt to the Ogdensburgh Bank.

We do not deem it necessary to cite or comment on the authorities of text books and cases bearing on this subject. They are uniform and consistent in the same direction as to what constitutes *general* as distinguished from *special* damages, what may be given in evidence under the general averment of damage, what can only be given in evidence under an averment of special damage, and what cannot be given in evidence and recovered for under either general or special averments.

We agree with the counsel for the plaintiff that in this action, notwithstanding full effect be given to the special order as to the return of the bonds, the plaintiff would be entitled to recover for any general damage shown to have been sustained beyond the value of the bonds themselves, as well as for any special damage that should have been properly averred and proved. Upon a very careful examination of the case, however, we are not able to discover that the course taken by the county court has deprived the plaintiff of any right to which it was entitled in respect either to general or special damage.

The judgment is affirmed.