## COLBY *v.* REED.

1. Unless the contract so provides, the demand of one of the parties thereto that the other shall perform his agreement need not be in writing.
2. Where the amount to which the plaintiff is entitled is clear, an action by him for a breach of the contract will not be defeated solely on the ground that his demand upon the defendant was in excess of that amount.
3. In such an action the court cannot, unless so authorized by statute, compel the plaintiff to accept, in mitigation of damages, when tendered to him by the defendant in open court, the property for the non-delivery of which the action was brought.

ERROR to the Circuit Court of the United States for the Eastern District of Wisconsin.

The facts are stated in the opinion of the court.

*Mr. Edwin H. Abbot* for the plaintiff in error.

*Mr. Matt. H. Carpenter, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Tender, when the demand is of money, for a definite sum or for an amount capable of being made certain, may at common law be made on the very day the money becomes due, but it will constitute a defence only when made before the action is brought. Chitty, Contr. (10th ed.) 732, 733; 2 Pars. Contr. (6th ed.) 148; 9 Bac. Abr., Tender D. 321; *Suffolk Bank* v. *Worcester Bank*, 5 Pick. (Mass.) 106; *Pitcher* v. *Bailey*, 8 East, 171; *Briggs* v. *Calverly*, 8 T. R. 629.

In actions of debt and, assumpsit the principle of the plea of tender is that the defendant has always been ready to perform the contract, and that he did perform it as far as he was able by tendering the requisite money, the plaintiff himself having prevented a complete performance by his refusal to accept the tender. Such a tender and refusal do not discharge the debt, and hence the plea must proceed to allege that the defendant is still ready to perform, and it must contain a *profert in curia* of the money tendered. *Ayers* v. *Pease*, 12 Wend. (N. Y.) 393.

Arrangements were made between the parties to advance material aid in the construction of a certain land-grant railroad, and to promote that object the defendant agreed with the plaintiff, in writing under seal, that he would take stock in the company to the amount of $200,000, and that he would pay or deliver to the order of the plaintiff $45,000 of the proceeds of the subscription. Pursuant to the agreement, the defendant subsequently paid the agreed sum in money, and received the certificates of the stock to the same amount. Progress was made in the undertaking, but it turned out that more money was needed to complete the enterprise; which made it necessary that the same parties should subscribe for an additional hundred thousand dollars of the stock. It appears that they were willing to do so; but that the plaintiff could not furnish his proportion of the money for the new subscription, and that the defendant, in consideration of receiving $5,000 out of the plaintiff's stock, agreed to pay the entire amount of the additional subscription and to take the whole of the new stock, which left in his hands only $40,000 of the original stock belonging to the plaintiff. Money to the amount

of $2,000 was, about the same time, borrowed for six months by the plaintiff of the defendant, on a pledge of $8,000 of plaintiff's stock in the hands of the defendant, which the record shows was never repaid, leaving in the possession of the defendant only $32,000 of the first subscription.

Throughout these transactions the relations between the parties were amicable; but they subsequently became hostile, and on the 28th of May, 1875, the plaintiff instituted the present suit in the Circuit Court, in which he claimed judgment against the defendant for the stock of the railroad in his hands to the amount of $45,000, with interest, as alleged in the complaint.

. Service was made; and the defendant filed an answer, setting up several defences: 1. That the allegation that he refused to deliver the stock mentioned in the complaint is not true. 2. That no proper demand for the delivery of the same was ever made. 3. That the demand made was for the delivery of $45,000 of the stock when the defendant well knew that he was only entitled to demand $32,000 of the same, and the defendant avers that he always was and still is ready and willing to deliver the true amount. 4. That the plaintiff is indebted to the defendant in the sum of $2,000, for which he claims an allowance as a set-off or as a counter-claim. 5. That the value of the stock is much below par, and that the pledge to him for the loan is inadequate as security.

Preliminary matters being closed, the parties went to trial. Evidence was introduced on both sides, and the court submitted certain questions to the jury, to which they responded to the effect following: That the plaintiff before the commencement of the action made a demand of the stock from the defendant, and that the defendant refused to deliver the same. That the parties entered into the agreement set forth in the answer, by which the plaintiff was to deliver to the defendant the excess of the stock originally subscribed, above $40,000, in the event that it should become necessary to make the additional subscription of $100,000, and that the notice required of the defendant in that contingency was waived by the plaintiff; and the jury also found that the amount of stock which the plaintiff was entitled to demand and receive

was only $32,000, and that the cash value of the same was and is $9,600, which finding appeared to be satisfactory to the plaintiff, as he moved for judgment in his favor; but the defendant filed two motions, — one that the plaintiff be ordered to accept the stock found to be due in mitigation of damages, and the other that a new trial be granted.

Hearing was had, and the court overruled the motions of the defendant and rendered judgment for the plaintiff in the sum of $7,641.72. Before doing so, however, the court adjusted the equities between the parties as follows :. Interest in favor of the plaintiff was added to the sum found due by the jury as the value of the stock, and the court, deducting therefrom the counter-claim and interest set up by the defendant, rendered judgment for the balance.

Seasonable exceptions were filed by the defendant and he sued out the pending writ of error.

Numerous errors are assigned by the defendant, but in the view taken of the case it will not be necessary to give them a separate examination. Attention will be called to the substantial issues presented in the pleadings and to the material questions which arose in the progress of the trial and in the rendition of the judgment.

Both parties agree that the controversy grew out of a contract between them, and that the redress sought by the plaintiff is compensation for the alleged breach of it and the failure of the defendant to comply with its terms. Every pretence of conversion, therefore, may be dismissed in the outset without the least consideration, as there is nothing either in the cause of action, or the form of the remedy, or in the allegations of the complainant, or in the averments of the answer, or in the evidence introduced by either party, which gives such a theory any support whatever. Instead of that, the plaintiff set up the agreement and alleges that the defendant broke it, and he claims compensation for the damage he suffered from its nonperformance by the defendant. Demand of performance is also alleged by the plaintiff, which is explicitly denied by the defendant, who avers in his answer that he was always ready and willing to perform to the full extent of his obligation under the agreement.

· Neither the answer nor the evidence shows that the defendant ever did perform the agreement to deliver, but what he alleged and attempted to prove was that the plaintiff claimed $13,000 of stock more than he, the defendant, contracted to deliver, and his theory is that the demand being in excess of the obligation created by the contract, was null and of no effect, and inasmuch as the demand exceeded the right, he was not required to perform what the contract required.

Two issues of law were presented by the defendant in respect to the alleged demand : 1. That it must be in writing, and that an oral demand was insufficient. 2. That a request to deliver more property than the party is entitled to receive and a failure to deliver placed on that ground do not in law constitute a sufficient demand and refusal to sustain an action like the one before the court.

Had the contract contained the stipulation that the demand should be in writing, there would be much force in the suggestion ; but inasmuch as the contract is silent upon the subject, the court is of the opinion that the ruling of the Circuit Court that it might be verbal or in writing is undoubtedly correct. *Smith* v. *Young*, 2 Dev. & Bat. (N. C.) 26.

Responsive to the second request, the judge told the jury that where a party demands more than he is entitled to receive, that that circumstance *alone* will not justify the other party in refusing to deliver that part of the property to which the party making the demand is entitled, provided it is distinct, well known, and clearly distinguishable from that to which the demanding party had no right ; that if the plaintiff demanded $45,000 of the stock when he was only entitled to $32,000 of the same, the defendant could not properly refuse to deliver what the plaintiff was entitled to receive, on the ground that the demand was excessive. Injustice and inconvenience would flow from any different rule, and inasmuch as we are all of the opinion that the instruction was correct, it is not deemed necessary to pursue the subject. 2 Greenl. Evid., sect. 604.

Matters of fact in the case need no examination, as they are found by the jury, and are not the subject of review in this court. Actual demand, it is conceded, was necessary to complete the cause of action, and the court is of the opinion that

the demand was not vitiated because it was for too much, as the party of whom it was made was under no obligation to tender more than was due. Chitty, Contr. (10th ed.) 738. Both demand and refusal are established by the special verdict, which is all that need be said upon the subject.

Two other assignments of error deserve to be considered, and they may be examined together, as they involve the same question. They are as follows: 1. That the court erred in denying the motion of the defendant to require the plaintiffs to accept the stock tendered by the defendant to the plaintiff in open court in reduction of the damages. 2. That the court erred in rendering judgment for the full value of the stock in money, and in not applying the stock deposited in court in mitigation of damages, at its value as fixed by the jury.

Tender of the stock before breach of the condition or before the commencement of the action is not pretended, nor is it pretended that the defendant ever made a money tender of the debt due to the plaintiff, either before or after the action was commenced. Such a tender, if made before action brought and kept good, is a defence to the action, as the money to pay the debt remains in the court, and the party plaintiff is not entitled to prevail unless the sum tendered was insufficient, nor is it questioned that such a tender in a proper case, and payment of the money into court, may be made after action brought; but the rule is universal, that in that event the tender and the payment must include the costs to that time as well as the debt. Addison, Contr. (6th ed.) 954.

Authority undoubtedly exists in the defendant to tender the debt, if it is of a definite amount, before action brought; but it is equally well settled, even if it be large enough to pay the whole debt, that it is utterly nugatory after action brought, unless it also include a sum sufficient to pay the costs. *Emerson* v. *White*, 10 Gray (Mass.), 351; *The People* v. *Banker*, 7 How. (N. Y.) Pr. 258.

Exceptional cases may be found, but they arise in States where the matter is regulated by statute. *Ashburn* v. *Poulter*, 35 Conn. 553; *Call* v. *Lothrop*, 39 Me. 434; Rev. Stats. (Me.) 642; Gen. Stats. (Mass.) 671.

No such regulation has ever been adopted by the State in

which this controversy arose, from which it follows that it must be governed by the general rules, which do not give the right of tender after action brought, except in the form and under the conditions before explained.

Concede that, and still it is insisted by the defendant that the court erred in refusing his request to order the plaintiff to accept the certificates of stock in mitigation of damages, which presents the principal question in the case.

Power to tender back the property in trover, where the gist of the action is conversion, is certainly vested in the defendant, and its exercise is a matter of frequent occurrence, where it appears that the property is in the same condition as when taken. Such a right may doubtless be exercised where the charge is conversion or a wrongful taking even after action brought, if it be accompanied with a tender of costs and intervening damages. *Rutland & Washington Railroad Co.* v. *Bank of Middlebury*, 32 Vt. 639; *Kaley* v. *Shed*, 10 Metc. (Mass.) 317.

There can be no manner of doubt that the defendant in actions of trover and trespass *de, bonis asportatis*, in cases where the taking was not unlawful and the property is not essentially injured, will be allowed to surrender the property in specie in mitigation of damages. *Hart* v. *Skinner*, 16 Vt. 138; *Fisher* v. *Prince*, 3 Burr. 1363; *Pickering* v. *Truste*, 7 T. R. 54.

Courts, beyond doubt, may in a proper case, where the action is trover or trespass *de bonis*, order the plaintiff to accept the property in mitigation of damages against his wishes; and the rule is that the return of the property in such a case will reduce the damages to those actually sustained for the wrongful taking, together with intervening damages, and costs. *Yale* v. *Saunders et al.*, 16 Vt. 243.

Orders of the kind are frequently given in actions of trover and trespass *de bonis asportatis*, but the practice is not applicable in actions of assumpsit for a breach of contract, the rule being that the party, if he desires to stop the litigation, must adopt the measure prescribed by the common law, except in jurisdictions where a different mode of proceeding is prescribed by statute.

*Judgment affirmed.*