## THE AMERICAN EXPRESS COMPANY
### v.
### JOHN M. BRUNSWICK ET AL.

COMMON CARRIER—EXPRESS COMPANIES—GOODS SENT FOR COLLECTION ON DELIVERY—DAMAGES.—Appellees sold a pool table to C. and sent the same by the railroad company, to be delivered on payment by C. of $25 cash and the execution of certain notes, which were del v red to appellant with the bill of lading. The agent of appellant at the point of destination delivered the table to C. without requiring payment of the $25, or execution of the notes. Afterwards, on discovering the error, he took possession of the table from C. uninjured, and held the same for appellees. *Held*, that although there had been a technical conversion of the table by appellants, yet if it was not willful, and the property was restored uninjured before suit brought, such fact should go in mitigation of damages, even without proof of acceptance. The damages should be measured by the actual loss or amount of the injury under the circumstances as shown.

APPEAL from the County Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding. Opinion filed December 8, 1879, as of May 2, 1879.

Messrs. SMALL & MOORE, for appellant; contended that the measure of damages for an improper delivery would be the injury arising therefrom, and cited Worth v. Edwards, 52 Barb. 40; Ill. Cent. R. R. Co. v. Finnegan, 21 Ill. 648; Sherman & Redfield on Negligence, § 598; Sedgwick on Damages, 273.

A bailee for hire is only bound to the exercise of ordinary diligence: McGregor v. McDevitt, 6 Ill. 261; Francis v. Schrader, 67 Ill. 272; Story on Bailments, § 23.

It must be gross negligence that will make a bailee for hire, who has promptly recovered goods improperly delivered, to pay the full value: Story on Bailments, 319; Walrath v. Redfield, 11 Barb. 368; Shearman & Redfield on Negligence, § 600.

Mr. B. M. SHAFFNER, for appellees; that the delivery of the bill of lading to appellant was a symbolical delivery of the property so as to vest it in appellant, cited M. C. R. R. Co. v. Phillips, 60 Ill. 190; Wilkes v. Ferris, 5 J. R. 335; Burton v. Curyea, 40 Ill. 320; Rowley v. Bigelow, 12 Pick. 314.

A carrier is liable for wrongful delivery: Devereux v. Barclay, 2 Barn. & Ald. 702; Youl v. Harbottle, 1 Peake, 68; Angell on Carriers, § 324.

Receiving goods with instructions to collect, a carrier is liable if he delivers without receiving payment: Tooker v. Gornur, 2 Hilton, 71; Am. Ex. Co. v. Lesem, 39 Ill. 313; Lubbock v. Inglis, 1 Stark. 104; Am. M. U. Ex. Co. v. Milk, 73 Ill. 224; Am. M. U. Ex. Co. v. Wolf, 79 Ill. 430; Baldwin v. Am. Ex. Co. 23 Ill. 197.

PLEASANTS, J.    The declaration herein is in case, by appellees against appellant and the Chicago, Milwaukee & St. Paul Railway Company, alleging that defendants, as common carriers, received of plaintiffs a pool table, to be safely carried and delivered to Aaron Compton, of Caledonia, Minnesota, upon his complying with the terms therein mentioned, and conducted themselves so negligently in and about the delivery of the same that it became wholly lost to the plaintiffs.    An additional count, afterwards filed, averred that they received of plaintiffs, at Hokah, a pool table, to be delivered to Compton, upon his paying, etc., and that they conducted themselves so negligently in and about the delivery of said table that it became wholly lost to the plaintiffs.

Defendants severally filed the general issue, and the cause was tried by the court without a jury.

It appeared that plaintiffs, having contracted the table to Compton for $200—$25 down, $25 to be paid on delivery, and the residue in monthly installments of $15 each, with interest, to be evidenced by his notes and secured by chattel mortgage —on the 9th day of December, 1876, shipped the same by the C. M. & St. P. R'y, in three boxes, marked " The J. M. Brunswick & Balke Co., Caledonia, Minn., via Hokah," and received a bill of lading. About the same time they delivered to the express company at its Chicago office a package of papers, consisting of the bill of lading,—across the face of which was written a direction to deliver to said company,—the notes and mortgage to be executed by Compton, and a letter to its agent at Hokah, instructing him to deliver the table to Compton upon his paying $25 and executing the said notes and chattel mortgage.

This was a common arrangement for collection in such cases between appellees and the express company, and for its service the latter received the uniform compensation of $2.50.

It happened that the station agent of the railway company, at Hokah, which was the one nearest to Caledonia, was also the agent of the express company.

A day or two after the arrival of the boxes and package Compton appeared, paid the freight charges, received and took away the boxes, which were delivered to him by the clerk, under the direction of the agent, without paying the $25, or signing the notes and mortgage, set up the table and used it for a month. Some three weeks after its receipt at the station, the agent's attention was called to the matter, by a demand from the home office, for the money and securities; when, recurring to the package, he discovered he had overlooked the instructions. Thereupon, he immediately conferred with the company's superintendent of that division, and proceeded under his advice to regain possession of the property. Having demanded of Compton a compliance with the terms on which it was to have been delivered, and having been refused, he refunded to Compton the $25 he had paid in Chicago, together with amount of the freight charges, and took back the table, uninjured, as he swears, in as good condition as when first received,

and has held it ever since as the agent of the express company, subject to its order.

He further testified as follows: "The agent of the plaintiffs called on me at the station in Hokah, in January or February, 1877, and asked me what about that table, referring to the Compton table. I said to him, 'the table is here all right.' He said, 'I believe they are going to try and sell it.'" This certainly is not very satisfactory, but the subject was no further pursued. The statement was not objected to, explained or contradicted, and as it stands, has some tendency to show that before suit brought appellees were advised that the property was in possession of the agent, to whom it had been sent for immediate delivery to the purchaser, two or three months after it was so sent.

The witness also stated that he returned the papers unexecuted, to the office in Chicago, about six months after they were received; but was probably mistaken as to the time, since it appeared that on the 12th of November, 1877, the agent of the company at Chicago wrote to him, stating the fact and date of the transmission of the package and requesting him to return the collection to the shippers by the first express, with such explanation as he could give in regard to the case; to which he replied on the 14th, that a full statement had been made to the division superintendent, and that Compton refused to sign the notes. The suit was commenced in February, 1878.

Upon these facts the court found the railway company not guilty, and the appellants guilty, and assessed the plaintiff's damages at $193.33—being the price of the property, less the cash payment, with interest.

Conceding that a case was made against appellant under the additional count—that the property came into its possession by its agent at Hokah, and that he was negligent in respect to its delivery—how much are the plaintiffs entitled to recover?

The view of the court, as is manifest from the finding and was expressed on the trial, was that the delivery to Compton without payment and security, as required by the instructions, was a conversion of the property, and that the measure of damages was its value at the time of such conversion. with interest.

Doubtless that is the true measure, as a rule; but we suppose it is subject to be modified, in its application, by circumstances. Although there may have been a technical conversion, yet if it was not willful, and the property was restored uninjured before suit brought, it would go in mitigation of damages, even without proof of its acceptance. Greenfield Bank v. Leavitt, 17 Pick. 1; Hart v. Skinner, 16 Vt. 138; Yale v. Saunders, Ib. 243; Johnson v. Weedman, 4 Scam. 495; 1 Chit. on Pl. (margin) p. 161, and cases in notes. So, also, if the property is actually received by the plaintiff, although injured and after suit brought. Rand v. Rand, 5 Barr, 211.

Where the conversion was willful or the property has been materially injured, he cannot be compelled to receive it. Green v. Sperry, 16 Vt. 390; Hart v. Skinner, supra. 16 v 7. 136

Besides, this action was not for a conversion. The remedy for a wrong of the character here stated is usually sought in trover, where the property is in fact wholly lost or destroyed, or in assumpsit, which covers all damages resulting from the breach of the contract by the bailee, including the amount of the collection neglected to be made. Such are the cases cited by counsel.

Here the plaintiffs chose to declare, not for the loss of the unpaid balance of the price, nor for a conversion of the property, but specifically for negligence in the delivery of it, whereby, they allege, not that the price, but that the property itself was wholly lost to them. The evidence shows that only its possession for about a month was lost to them, and that before suit was brought the property itself was restored, nearly or quite uninjured, and their right as against the purchaser was wholly unimpaired.

If, under this allegation, proof of injury short of total loss or destruction is admissible, certainly the damage would not be presumed to be equal to a total loss, as the court in this case found. We think the damage should be measured by the actual loss or amount of the injury, under the circumstances here shown.

It is true that appellant's counsel objected on the trial to the offer of proof on the part of plaintiffs that about the time of

this delivery the market value of such property depreciated in consequence of a change in the style of such goods, but the objection was not based upon any ground which should preclude this court from holding that the rule of damages applied by the county court was erroneous, and the amount found unsupported by the evidence.

Reversed and remanded.