MAGIC CITY STEEL & METAL CORP.

v.

MITCHELL.

No. 35157.

Supreme Court of Oklahoma.

Dec. 15, 1953.

Rehearing Denied Jan. 5, 1954.

Irvine E. Ungerman, Tulsa, for plaintiff in error.

Valjean Biddison, Floyd L. Rheam, Tulsa, for defendant in error.

DAVISON, Justice.

Halley Mitchell, hereinafter referred to as plaintiff, sued the Magic City Steel and Metal Corporation, a corporation, hereinafter referred to as defendant, for damages for the conversion of certain oil field drilling equipment. The jury rendered a judgment for plaintiff in the sum of $450, judgment was entered thereon for said amount from which defendant has perfected this appeal.

The undisputed evidence disclosed that plaintiff, a drilling contractor, had just completed the drilling of an oil and gas well located near the City of Tulsa; that plaintiff had dismantled the rig and left certain oil well drilling equipment at the site of the well and was in the process of moving it to a new location; that plaintiff was the owner of the equipment; that the equipment involved herein was stolen from the lease by two thieves, loaded on a truck belonging to R. E. Lewis and delivered to defendant's place of business in Tulsa, Oklahoma, and sold to said defendant; that the business of defendant corporation is that of a junk dealer; that the sale and delivery was on the morning of November 14, 1947, being the same morning or the morning following the night of the theft.

Evidence introduced by plaintiff was to the effect that the property stolen from him was as follows: One moon generator, one brake lever, one brake shaft, a quantity of nuts and bolts, three bearing caps, one chain hoist, one sprocket gear, one V belt pulley, one roller chain, one sprocket flange, two casing wagons, one clutch throw, 31 x 2 inch sprocket, one hub for 4 inch sprocket. That plaintiff and the man in charge of the lease began a search of junk yards looking for the stolen property and that a part of the property was found in defendant's yard. That a portion of the stolen property was changed, injured and missing in the following particulars: That the moon generator had been cut up and the wheels taken out, and the generator damaged to such an extent that it was worthless; that the brake lever, brake shaft, nuts and bolts, clutch throw, 31 x 2 inch sprocket and hub for 4 inch sprocket were missing; that the chain hoist had been sold to a third party and found by plaintiff and then returned by the third party to defendant and placed by defendant in the pile of the other found property.

A deputy sheriff, testifying on behalf of plaintiff, testified that he went to the defendant's place of business several days after the theft at the request of plaintiff

for the purpose of running down the thieves and with a view to locating the balance of the stolen property; that during the conversation with defendant's foreman, the foreman explained that "Some of the articles brought in on that load * * * had been loaded in a car that was then at the dock—in fact, I believe there were two cars docked there" (railroad cars). (The making of this statement was denied by defendant's foreman.)

The plaintiff next offered evidence of the reasonable market value of the property. On cross-examination, the plaintiff was asked the "reasonable market value" of each item of property stolen and the total amounted to $660 which was $25 in excess of the amount plaintiff sued for.

Evidence on behalf of the defendant was to the effect that none of the property purchased by defendant had been altered after it reached the yard and a denial that defendant's foreman had told the deputy sheriff that some of the material had been taken off of the truck and loaded in railroad cars. That the property was innocently purchased by a licensed scrap dealer, as junk, and that a tender of the property had been made to plaintiff.

Defendant's first proposition for reversal is that when a duly licensed scrap dealer, in the usual course of business, innocently purchases property as was involved herein for junk, he may mitigate the damages by an offer to return the property to the owner, if the physical condition of the chattel is substantially unimpaired and the tender of the property is made promptly after the discovery of the mistake.

In arguing this proposition, defendant cites several cases including Colby v. Reed, 99 U.S. 560, 25 L.Ed. 484, and Truth Seeker Co., Inc., v. Durning, Collector, 2 Cir., 147 F.2d 54, all holding in substance that three conditions must occur for the mitigation of damages, one being that the physical condition of the goods must be unimpaired.

These cases, should we follow the rules of law promulgated therein, are not in point with the facts in the case at bar. In the present case, we find testimony to the effect that the property was impaired, some of it ruined, changed and missing.

■ It is not urged that there was not a wrongful conversion and that the related facts do not constitute a conversion. Aylesbury Mercantile Co. v. Fitch, 22 Okl. 475, 99 P. 1089, 23 L.R.A.,N.S., 573; Brown v. Higby, 191 Okl. 173, 127 P.2d 195; United States Zinc Co. v. Colburn, 124 Okl. 249, 255 P. 688.

■ Under the facts in the present case, the plaintiff was under no duty to accept the property discovered on a tender of same by defendant, nor could defendant use said offer of tender in mitigation of damages.

In the early case of West Tulsa Belt Ry. Co. v. Bell, 54 Okl. 175, 153 P. 622, the second syllabus is as follows:

"After the conversion of property has become complete, the defendant cannot escape liability, nor reduce the actual damages recoverable, by a tender back of the property."

In deciding the present case it is unnecessary for us to go as far as the court went in the above cited case for under the facts before us the defendant could not mitigate the damages in the present case under decisions of courts which have a more liberal view on the mitigation of damages in such cases. 53 Am.Jur. 904, Trover and Conversion, § 116, states that the general rule is that where an actual conversion of goods has taken place, the owner is under no obligation to receive them back upon tender, and after the conversion has become complete, the wrongdoer cannot lessen the actual damages by tendering back the property, especially so where the taking is willful, or *where the property is substantially injured.*

Also see 65 C.J. 146, Trover & Conversion, § 270, wherein it is said that "* * * the rule, as generally declared and followed, is that an unaccepted tender or offer to return the particular property, or other property of like species, quantity, and quality, cannot be considered in mitigation of damages."

■ In the present case, the jury could have been within its province in concluding

that the generator had been cut up and destroyed after it reached defendant's premises, and under the facts the jury had the right to find that a part of the stolen property had been sold and shipped from its yard.

It is next argued that an action in trover and conversion cannot lie until a demand has been made by plaintiff from defendant, and that since no demand was made, plaintiff could not recover. Under the facts of the present case, no demand was necessary. 65 C.J. 45, states as follows:

"An action for conversion without a prior demand and refusal is justified by a transfer of property by one having no right or title thereto, irrespective of the character of his possession."

Also in the present case no demand was necessary due to the fact that defendant had offered to return the balance of the property which he had retained in his possession, which offer was not accepted.

Defendant also complains that the court erred in refusing to give certain instructions requested by defendant and the giving of other instructions which were excepted to by defendant. These instructions deal with the necessity of a demand or the right to mitigate damages by a tender of the property with the exception of one instruction which deals with the proper measure of damages.

What we have heretofore said covers the objections to the giving of and the refusal to give certain instructions relative to the necessity of the demand and the mitigation of damages and obviates the necessity of any further discussion on these questions.

On the question of measure of damages defendant complains that instruction No. 6 is erroneous in that the instruction in part states that "In arriving at your verdict you should take into consideration the value to the owner of the property converted, at the time the property has been converted, and give plaintiff a verdict that will reasonably compensate him for the actual value of the property at the time it

was converted * * *." Defendant contends that the use of the words "the value to the owner" makes the instruction erroneous. It is unnecessary for us to decide whether this instruction is as a general proposition correct or erroneous, for in the present case, we may assume, without deciding, that it was erroneous. The only testimony in the case relative to the amount of damages referred to the "reasonable market value" of the various items of property on the date of the conversion. The value of each item was brought out on cross-examination of defendant by plaintiff as the reasonable market value of the item at the time of the conversion. There was no evidence of "the value to the owner." Certainly the jury was not mislead as to the value of the property, and if giving instruction was error, it was harmless and did not affect the substantial rights of the parties and is not grounds for reversal. Title 12 O.S.1951 § 78.

Finally it is argued that the court erred in failing to discharge the jury because of a mistrial due to improper argument by counsel for plaintiff at the trial. This assignment of error is based upon the fact that during counsel's argument he stated that the reason the action against the defendant was filed so late was that the delay was due to the fact that the attorneys were trying to settle. The plaintiff's counsel made no reference to any terms contained in the negotiations for settlement. Defendant argues that this is evidence offered of a compromise and is error. We do not agree. Defendant in its argument had questioned why plaintiff had waited over a year to file his cause of action against defendant and plaintiff was justified in making a reasonable explanation and any argument in this respect does not come within the rule of offering evidence of a compromise.

Finding no error of the trial court the judgment is affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.