CHESHIRE.

---

OWEN *v.* WESTON *& a.*

Conformably to the common law of this state, for ascertaining, establishing, and vindicating contested rights in civil cases, each party is entitled to such remedy, including form, method, and order of procedure, as justice and convenience require.

When the question is raised in a suit at law whether a third person should be sole defendant, justice may require an amendment and notice making him a defendant, and a mode of trial on which the three parties will be bound by the judgment.

Whether all or a part only of the issues in an action shall be tried at one time, and which shall be tried first, is a question of justice and convenience, and ordinarily a matter of fact to be determined at the trial term.

CASE, against persons alleged to be the trustees of the Manchester & Keene Railroad, for an injury received by the plaintiff, March 19, 1881, while riding as a passenger " on the cars procured and run upon said railroad under the control and direction of said defendants as trustees as aforesaid." The defendants moved to dismiss on the ground that the railroad corporation should be defendants instead of the trustees.

*D. H. Woodward*, for the plaintiff.

*J. W. Fellows*, for the defendants.

DOE, C. J. The progressive introduction of oral and written forms and methods of pleading, proof, trial, judgment, and process, initial, intermediate, and final, under the common law of every nation, from the beginning to the ·present time, has not been illegal. "Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character : to obtain right and justice freely without being obliged to purchase it, completely and without any denial, promptly and without any delay, conformably to the laws." Bill of Rights, art. 14. Conformably to a principle of our common law, in this article comprehensively and strenuously affirmed, for ascertaining, establishing, and vindicating contested rights in civil cases, each party has such remedy, including form, method, and order of procedure, as justice and convenience require. *Metcalf* v. *Gilmore*, 59 N. H. 417, 433, 434, 435 ; *Walker* v. *Walker*, 63 N. H. 321, 326. This court has not been intrusted with the power of directly and formally abolishing substantive rights of person and property, or the scarcely less dangerous power of infringing them indirectly by withholding the necessary incident·and appurtenant right of complete and prompt remedy. Within constitutional and statutory limits, and upon due consideration of what is just and convenient in a legal view that may be broader than the facts of a single case, parties are entitled to the most just and convenient procedure that can be invented.

"In * * early times the chief judicial employment of the chancellor must have been in devising new writs, directed to the courts of common law, to give remedy in cases where none was before administered. And to quicken the diligence of the clerks in the chancery, who were too much attached to ancient precedents, it is provided by statute (Westm. 2, 13 Edw. II, *c.* 24) that 'whensoever from thenceforth in one case a writ shall be found in chancery, and in a like case falling under the same right, and requiring like remedy, no precedent of a writ can be produced, the clerks in chancery shall agree in forming a new one ; and if they cannot agree, it shall be adjourned to the next parliament, where a writ shall be framed by consent of the learned in the law, lest it happen

for the future that the court of our lord the king be deficient in
doing justice to the suitors.' And this accounts for the very great
variety of writs of trespass on the case to be met with in the regis-
ter; whereby the suitor had ready relief, according to the exigency
of his business, and adapted to the specialty, reason, and equity of
his very case. Which provision (with a little accuracy in the
clerks of the chancery, and a little liberality in the judges, by ex-
tending rather than narrowing the remedial effects of the writ)
might have effectually answered all the purposes of a court of
equity, except that of obtaining a discovery by the oath of the
defendant. But when, about the end of the reign of King Edward
III, uses of land were introduced, and though totally discounte-
nanced by the courts of common law, were considered as fiduciary
deposits and binding in conscience by the clergy, the separate juris-
diction of the chancery as a court of equity began to be estab-
lished, and John Waltham, who was bishop of Salisbury, and chan-
cellor to King Richard II, by a strained interpretation of the
above-mentioned statute of Westm. 2, devised the writ of *sub-
pœna*, returnable in the court of chancery only, to make the feoffee
to uses accountable to his *cestuy que use :* which process was after-
wards extended to other matters wholly determinable at the com-
mon law, upon false and fictitious suggestions. * * * As the
clergy * * * attempted to turn their ecclesiastical courts into
courts of equity by entertaining suits for breach of faith, as a
spiritual offence against conscience, in case of nonpayment of
debts or any breach of civil contracts; till checked by the constitu-
tions of Clarendon which declared that pleas of debts, due with or
without the interposition of a trust, should be in the king's juris-
diction : therefore probably the ecclesiastical chancellors * * *
were remiss in abridging their own new-acquired jurisdiction;
especially as the spiritual courts continued to grasp at the same
authority as before in suits for breach of faith so late as the fif-
teenth century. * * * In the reigns of Henry IV and V the
commons were repeatedly urgent to have the writ of *subpœna*
entirely suppressed, as being a novelty devised by the subtlety of
Chancellor Waltham against the form of the common law; where-
by no plea could be determined unless by examination on oath of
the parties, according to the form of the law civil, and the law of
holy church, in subversion of the common law." 3 Bl. Com. 50,
51, 52; Story Eq., *c.* 2; 1 Campbell's Chancellors, 3–11.

"It is a settled and invariable principle in the laws of England,
that every right when withheld must have a remedy, and every
injury its proper redress." 3 Bl. Com. 109. The efficient opera-
tion of this maxim in this state does not depend upon such forms
as happened to be invented, for particular cases, by clerks "too
much attached to ancient precedents," or by chancellors engaged in
enlarging their own jurisdiction upon "a strained interpretation,"
and "false and fictitious suggestions." If the common law had

imposed the duty of framing its remedies upon nobody but a chancellor deriving equity power chiefly from the inadequacy of those remedies, the chancery writ of *subpœna*, indefinitely expanded, might have kept the work of juries and jury courts within narrow bounds. Employing common-law judges and practitioners, as well as chancellors and chancery clerks, in the service of devising measures of judicial administration, the remedial branch of immemorial custom has not been extinguished or exhausted by its own inventions; and it does not confine the duty of maintaining rights to ways and means that are defective. The permanent necessity of adequate remedy continues to sanction the best inventible procedure, and to make the form and substance of relief at law more ample, specific, and equitable.

In an action for taking, detaining, or converting personal property, an order may be made allowing the defendant to surrender all or a part in mitigation of damages. *Fisher* v. *Prince*, 3 Burr. 1363; *Brunsden* v. *Austin*, Tidd's Pr. 490 (3d ed.); *Watts* v. *Phipps*, Bull. N. P. 49; *Earle* v. *Holderness*, 4 Bing. 462; *Colby* v. *Reed*, 99 U. S. 560, 566. *Fisher* v. *Prince* was decided in 1762. Upon motion, the defendant obtained an order for the plaintiff to show cause why, upon the defendant's delivering to the plaintiff the several goods and chattels for which the action was brought, and paying him his costs to the day of making the motion, further proceedings should not be stayed. It was urged on the part of the plaintiff that the motion was, in effect, to bring the goods into court; that it was contrary to the course of the court to bring in the thing demanded (excepting the single case of trover for moneys numbered); and that the reason which has been often given is, that the court do not keep a warehouse. "Lord Mansfield said, it is a pity that a false conceit should, in judicature, be repeated as an argument. 'The court does not keep a warehouse.' What then? What has a warehouse to do with ordering the thing to be delivered to the plaintiff? Money paid into court is payment to the plaintiff. The reason and spirit of cases make law, not the letter of particular precedents. In trover for money numbered, or in a bag, the court have ordered it to be brought in: yet the jury may give more in damages; they may allow interest (and in some cases they ought). The reason holds to every other case where a thing clearly remains of the same value; yet the jury may give damages for the detention. I remember its being done twice or thrice in things of small value. It ought to be done to prevent vexatious litigation, which a plaintiff may be tempted to pursue when in all events he is sure of costs. It ought to be done because it is the specific relief. * * An estimated value is a precarious measure of justice compared with the specific thing. * * Such motions ought neither to be refused or granted of course. They must depend upon their own circumstances."

In mitigation of damages, a plaintiff may be required to accept

a conveyance of land claimed by him. *Towle* v. *Lawrence*, 59 N. H. 501. A plaintiff may be required to file a bond to indemnify the defendant against claims. "If it be said that the court of law has no power to decree that the plaintiff shall file a bond of indemnity, the answer is, that such court can stay proceedings until it is filed, or it appears that it is not necessary for the security of the defendant." *Hill* v. *Barney*, 18 N. H. 607, 610. A defendant may be required to surrender a release, and his plea of release may be set aside. *Webb* v. *Steele*, 13 N. H. 230, 239; *Gerrish* v. *Clough*, 36 N. H. 519, 524; *Holly* v. *Huggeford*, 8 Pick. 73, 77, *n*. 3. A will may be admitted to a limited probate. *Marston* v. *Marston*, 17 N. H. 503, 508. By a great variety of orders in suits at law, objections may be removed, and specific protection and relief may be given to each party. *C. P. Inst.* v. *Stone*, 52 N. H. 365, 367, 368; *Hobbs* v. *Hobbs*, 58 N. H. 81; *Morrill* v. *Hovey*, 59 N. N. 107, and cases cited; 2 Sutherland, Damages, 271; Rawle, Covenants, 281 (4th ed.). The common law has not ceased to require the invention of forms of action demanded by the convenience of justice. *Walker* v. *Walker*, 63 N. H. 321, 326.

Statutes allowing amendments of form and substance in any stage of the proceedings, are reënactments of the common-law right of litigants, compelling judges to do their common-law duty. 3 Bl. Com. 407–411; *Rex* v. *Wilkes*, 4 Burr. 2527, 2567–2572; *McKean* v. *Cutler*, 48 N. H. 370, 376. The notion, that when judgment had been given and enrolled no amendment could be made at a subsequent term (3 Bl. Com. 407), was long ago abandoned. A judgment rendered in 1817 *( Chamberlain* v. *Crane*, 1 N. H. 64) was amended in 1827 "with a saving of all rights acquired by third persons under the judgment." *Chamberlain* v. *Crane*, 4 N. H. 115. After writ of error brought, an erroneous judgment and an erroneous execution may be vacated or corrected on motion and notice; and other proceedings may be stayed to await the result of the motion. *Rees* v. *Morgan*, 3 T. R. 349; *Rowell* v. *Bruce*, 5 N. H. 381, 383; *Bellows* v. *Stone*, 14 N. H. 175, 203; *Chase* v. *Wyeth*, 17 N. H. 486, 487, 488; *Wiggin* v. *Veasey*, 43 N. H. 313; *Judge of Probate* v. *Webster*, 46 N. H. 518; *C. P. Inst.* v. *Stone*, 52 N. H. 365, 367; *W. Bank* v. *Clement*, 58 N. H. 533; *County* v. *Clark*, 60 N. H. 209; *Moore* v. *Carpenter*, 63 N. H. 65; *Clough* v. *Moore*, 63 N. H. 111. To cure a defect of form, an amendment may be ordered; but without an amendment, such a defect may be disregarded. 3 Bl. Com. 407; *Rowell* v. *Bruce*, 5 N. H. 381, 383; *Berry* v. *Osborn*, 28 N. H. 279, 286, 287; *McKean* v. *Cutler*, 48 N. H. 370, 376. The form of action may be changed by amendment. *Rider* v. *Chick*, 59 N. H. 50; *Stebbins* v. *L. Ins. Co.*, 59 N. H. 143. Counts in contract and tort may be joined in the original declaration, or by amendment before or after verdict. *Merrill* v. *Perkins*, 59 N. H. 343; *Rutherford* v. *Whitcher*, 60 N. H. 110; *Elsher* v. *Hughes*, 60 N. H. 469; *Peaslee* v. *Dudley*, 63

N. H. 220. A new party may be joined as plaintiff after verdict *(Annis* v. *Gleason,* 56 N. H. 16), and may have judgment and execution in severalty for his share of the damages. *Chauncy* v. *Ins. Co.,* 60 N. H. 428; *Cole* v. *Gilford,* 63 N. H. 60; *Brooks* v. *Howison,* 63 N. H. 382, 388; *C. S. Bank* v. *Whittle,* 63 N. H. 587. A new plaintiff may be introduced by an amendment substituting a trustee for his beneficiary *(Judge of Probate* v. *Jackson,* 58 N. H. 458), a principal for his agent *(Boudreau* v. *Eastman,* 59 N. H. 467), a creditor for a surety. *Buckminster* v. *Wright,* 59 N. H. 153. Misjoinder of plaintiffs and defendants may be cured after verdict. *Demeritt* v. *Mills,* 59 N. H. 18. After verdict, and without a new trial, either party's defective pleading and proof may be cured by such amendments and evidence as would not have affected the verdict if they had been admitted at the trial. *Hoit* v. *Russell,* 56 N. H. 559, 566; *Roulo* v. *Valcour,* 58 N. H. 347; *Lyons* v. *Child,* 61 N. H. 72. A law-term case, erroneously entered at the trial term, may be removed to the law term. *State* v. *P. & O. R. R.,* 58 N. H. 113. An action, entered in a wrong county, may be transferred to the county in which it should have been entered. *Bartlett* v. *Lee,* 60 N. H. 168. In a suit at law, either party may be allowed to file a bill in equity as an amendment of his pleading; and in a suit in equity, either party may be allowed to file a declaration at law. *Metcalf* v. *Gilmore,* 59 N. H. 417; *Walker* v. *Walker,* 63 N. H. 321, 326; *Brooks* v. *Howison,* 63 N. H. 382, 389. As justice may require that leave to amend be granted to either party on conditions that will give the other party specific relief *(Bellows* v. *Stone,* 14 N. H. 175, 204), so justice may require that leave to amend be refused. *Redding* v. *Dodge,* 59 N. H. 98.

Upon inquiry in this case at the trial term, it may be found that the question whether the trustees or the railroad company should be defendants ought to be decided in a suit in which the company, as well as the trustees and the plaintiff, will be bound by the decision. The plaintiff can be ordered to file an amendment joining the company as defendants, and they can be summoned by a duly attested copy of writ, amendment, and order of notice. Laws of 1883, c. 22. It is not admitted or proved that the whole controversy cannot be conveniently tried and adjudicated in this suit. A bill in equity *(Webster* v. *Hall,* 60 N. H. 7) may not be necessary. *Davis* v. *Bradford,* 58 N. H. 476, 480. In assumpsit for a debt which the defendant admits was once due from him to the plaintiff, the plaintiff may fail because the jury find a debt of the same amount was due to the defendant from A, and the three agreed that A, instead of the defendant, should be the plaintiff's debtor. *Heaton* v. *Angier,* 7 N. H. 397; *Morse* v. *Allen,* 44 N. H. 33. Bringing an action against A, the plaintiff may fail again because the jury find there was no such agreement. His remedy might be inadequate if his first action could not be one in which the three

persons would be bound by one verdict on the question of nova-
tion.    A trilateral question may need an action of a corresponding
form.    In foreign attachment, the plaintiff's claim against the
defendant, a cross-action in the form of a setoff, the question
whether the trustee holds certain property, and the question
whether that property belongs to the defendant, the trustee, or
another claimant, may be tried without a bill in equity; and all
parties may be bound by several judgments rendered in the many-
sided suit.   Equity jurisdiction, without the right of jury trial, is
not to be extended by imaginary obstacles of procedure at law.

It does not appear that issues between this plaintiff, the trustees,
and the company will raise any practical difficulty of trial, or that
the plaintiff can be justly driven to another suit by the circum-
stance that this railroad is run by trustees.    The trustees and the
company may act together in resisting the plaintiff's claim.    It
may be their duty to do so.    If the plaintiff obtains a verdict, the
judgment can be put in a form that will impose the liability upon
the party by whom, and the property out of which, the judgment
should be satisfied; and the form of the judgment in that respect
may be a question that can be equitably postponed until it is set-
tled that the plaintiff is entitled to judgment.    If the trustees'
personal liability is asserted by the plaintiff or the company, and
it becomes necessary to try that part of the case, it can be tried at
a proper time.    Whether all or a part only of the issues in any
action between two parties shall be tried at one time, and which
shall be tried first, is a question of justice and convenience, and
ordinarily a matter of fact, to be determined at the trial term.
*Bemis* v. *Morey*, Carroll, June, 1883; *Clough* v. *Fellows*, 63 N. H.
133; *Pearson* v. *Railroad*, 63 N. H. 534; *Dole* v. *Pike*, 64 N. H.
——.

*Motion denied.*

ALLEN, J., did not sit: the others concurred.