PACIFIC MILL COMPANY, LIMITED, *v.* ENTERPRISE
MILL COMPANY, LIMITED.

Exceptions from Circuit Court, First Circuit.

Argued November 11, 1904.    Decided November 28, 1904.

Frear, C.J., Hartwell, J., and Circuit Judge De Bolt in
place of Hatch, J.

Trespass de bonis asportatis—*evidence of conversion—demand for
property unidentified.*

The complaint averred that defendant "unlawfully and without
the consent of plaintiff took into its possession and converted to
its use" certain goods and chattels which the plaintiff in its evi-
dence showed were left on certain premises in its possession Sep-
tember 22, 1902, at the end of which day the premises were under
landlord and tenant's process for forfeiture of lease placed in
defendant's possession. The following day plaintiff's representa-
tives, finding the premises locked and in charge of defendant's
keepers, told a keeper that "they had some stuff there in the mill
and we come to get it;" that it was "some stock of mouldings and
different things there," but "the keeper refused to open the gate
or let us have it," saying he was put there by Mr. High of the
Enterprise Mill Company, and he gave instructions not to let us
take anything away." One of the men acting for the plaintiff saw
High, manager of the defendant corporation, enter the premises
and "sang out" to him, but got no reply. Held: That it was not
a sufficient demand to place the defendant in the position of a
wrong-doer, or to justify a finding of the plaintiff's conversion of
these chattels; also that a nonsuit asked for lack of proof of
demand ought to have been granted and instructions to have been
given in conformity therewith.

Damages in trespass de bonis—*mitigation by offer to return chattels.*

An offer to return chattels for the taking and converting of

which damages were claimed was admissible in evidence, the evidence showing no unlawful taking of the chattels.

EVIDENCE—*opinion of value two years before inspecting chattels.*

Witnesses who have inspected the condition of a lot of wooden mouldings and of boards may properly state their opinion of their value two years before they inspected them, and it was not necessary for them to know the precise kind of weather or exact place of the exposure.

### OPINION OF THE COURT BY HARTWELL, J.

This was an action entitled in the complaint as "case," in which it is averred that "on or about the 22nd day of September, 1902, the plaintiff was lawfully possessed in its own right and owned absolutely certain goods and chattels, to wit, stock of mouldings, carpenter benches, mixed lumber and wood, one ton of coal, hay and feed, parts of wagon, harness, house moving blocks, cribs and lumber trucks, pieces of tamarind and monkey pod for calabashes, one-half barrel of machine oil, and two gallons of cylinder oil. That thereafter, to wit, on or about the 23rd day of September, 1902, defendant unlawfully and without the consent of plaintiff took into its possession and converted to its use said goods and chattels, to the damage of plaintiff in the sum of $2079.27. That said goods and chattels were of the value of $2079.27." The defendant's answer was a general denial. March 18, 1904, a verdict was rendered for the plaintiff in "the sum of $800 with interest at six per cent. per annum." The substance of the defendant's exceptions may thus be stated: To the refusal of the court to strike out certain evidence of the plaintiff; to the refusal of the court to allow the defendant to show that it had made a written offer to the plaintiff after the action was brought in regard to the plaintiff taking away the chattels claimed; to the refusal of defendant's motion for nonsuit on the ground that plaintiff had not proved a demand; to the sustaining of an objection by the plaintiff to the evidence of Peter High that he had "put on two watchmen and instructed them not to let anything go in my absence;" these being the

men whom the defendant company, by Peter High its manager, had placed in charge of the chattels sued for; to the ruling out of certain evidence of the defendant hereinafter mentioned concerning the value of the chattels; to the following instructions given by the court:

"If you believe from the evidence that plaintiff was the owner of the property in question and entitled to the possession thereof and at the time of the commencement of this suit, and that while it was so entitled to such possession, and before the commencement of this suit, it made a legal demand of the defendant for the property, and that the defendant then had the property in its possession and refused and neglected to surrender the same to plaintiff upon such demand, this would be evidence of conversion of the property by the defendant, and the jury should find for the plaintiff."

"To constitute a legal demand of property it is not necessary that the demanding party make use of the word 'demand' or to specify by name or particular description the property demanded, but any demand which makes known to the party on whom the demand is made, that the demandant desires the possession of the property, and informs him, by reference or otherwise, what property he desires possession of, is sufficient to constitute a demand."

To the refusal of the court to give at the request of the defendant the following instructions:

"Unless you find that the refusal of the defendant's watchmen was the refusal of the defendant corporation, such refusal would not be evidence of a conversion by the defendant."

"I direct you to find for the defendant as to the value of any articles not specifically demanded by the plaintiff."

"Conversion is the exercise of dominion over an article with intent to repudiate the ownership of the true owner and in defiance of his rights."

To the denial of the defendant's motion for a new trial on the ground that the verdict was contrary to law and the evidence.

The evidence of the value of the chattels offered by the defendant and ruled out by the court was that of the witnesses Green and Campbell, who had examined the mouldings claimed by the defendant and who were asked: "Assuming that those mould-

ings were in the rack on the 23rd of September, 1902, and that they were moved from that to their present position as you saw them about five or six months ago, can you state what, in your opinion, was the value of those mouldings in September, 1902 ?" "Assuming that these benches have been worn the past two years, can you state what in your opinion they were worth in September, 1902 ?" "A small amount consisting perhaps of 100 surface feet of boards" having been pointed out by High as property of the defendant, the witness testified that he "should think perhaps they had deteriorated one-half of their first value" from two years before. He was then asked what in his opinion the value would have been two years ago, to which question the plaintiff objected and the objection was sustained.

The defendant in argument abandoned its first exception. The exception to the ruling out of High's evidence of his instructions to the watchmen is not sustained, the instructions being shown by other witnesses. The offer to return the chattels was admissible in this case. In case of a wrongful taking of another's goods the plaintiff is not obliged to take the goods back if offered after commencement of the action, unless the offer "be accompanied with a tender of costs and intervening damages." *Colby v. Reed,* 99 U. S. 566. But "there can be no manner of doubt that the defendant in actions of trover and *trespass de bonis asportatis,* in cases where the taking was not unlawful and the property is not essentially injured, will be allowed to surrender the property in specie in mitigation of damages."

"Courts, beyond doubt, may in a proper case, where the action is trover or *trespass de bonis,* order the plaintiff to accept the property in mitigation of damages against his wishes; and the rule is that the return of the property in such a case will reduce the damages to those actually sustained for the wrongful taking, together with intervening damages and costs." *Ib.*

"Upon the question concerning the amount of damages to be recovered the court should have adopted the prayer of the defendant, and have instructed the jury that his having given the plaintiff notice * * * that the association had relinquished

all claim to the machinery, * * * and the fact that the machinery had never been appropriated to their use, nor moved from the place where it had always been, should be considered in mitigation of damages." *Delano v. Curtis,* 7 Allen 470.

In case of a wrongful taking of the property, or a wilful and unqualified refusal to surrender it on demand, or when the property has suffered injury or deterioration in value, the defendant cannot compel the plaintiff to take it back, even in mitigation of damages. Redfield, J., in *Kimball v. Gay,* 16 Vt. 129, and cases cited in *Yale v. Saunders, Ib.* 242, n. Whether or not by strict rules of pleading a defendant ought to plead such offer puis darrein continuance and obtain an order that the plaintiff accept the property, if not changed in value, which was an early established practice, according to our practice that course was not requisite in a case like this in order to show reduction of the plaintiff's loss. A refusal of a seasonable offer to return the chattels, if in good condition, would lead to the inference that they were what the plaintiff did not want. The vague demand made upon the keepers of the property was not sufficient to place the defendant in the position of a wrong doer or an appropriator of the chattels left by the plaintiff on the premises at about five o'clock on September 22, 1902, when the defendant was placed in possession by the sheriff. The plaintiff had ample time if it desired to take away these things. The defendant did not place them there and cannot be held to have appropriated them unless by some act inconsistent with the plaintiff's exercise of ownership. The demand shown was that May and Arnemann for the plaintiff went to the premises the day after the plaintiff left, and finding them locked and a man stationed inside, as May testified, they "told him we had some stuff there in the mill and we come to get it." (p. 6, Tr. Ev.) "He refused to open the gate or let us have it." *Ib.* "He said he was put there by Mr. High of the Enterprise Mill Company and he gave instructions not to let us take anything away." *Ib.,* p. 7. "I told him the Pacific Mill Company had some stock of mouldings and different things there that belonged to the

company, and we came to get it." On cross-examination, *Ib.*, p. 13. "He said you better go and see Mr. High." *Ib.*

As Arnemann testified, p. 25, *Ib.*, May said to the "two men having charge of the premises," "We want our mouldings and hay;" "but they said they had orders from Mr. High not to let us have anything nor to allow us to go on the premises." This witness says that after they had made their demand on the keepers, and while talking with them outside the gate, they saw High "pass through into the premises," and "I sang out when Mr. High came out of the house and went over to the place where the machines are standing, I sang out to Mr. High and he could not help hearing it beyond any question, and besides that I saw one of the men walking up to Mr. High and talking to him. Mr. High shook his head and went out." *Ib.*, p. 26. The defendant was under no obligation to allow the plaintiff's representatives in the absence of the defendant's manager to enter the premises the following day and select and carry off what they claimed to be their property. Except as to a small quantity of boards, a bale and a half of hay, parts of a wagon and a gallon of machine oil, it does not appear that the defendant later on knew that any of the plaintiff's things were left on the premises. The description of the chattels in the plaintiff's complaint, with the exception of "one ton of coal, one-half gallon of machine oil and two gallons of cylinder oil," is itself too vague for identification. To refuse to allow the plaintiff in the absence of some officer of the defendant corporation to make its own selection and remove what it claimed, was not a refusal to allow it to point out to such officer what it claimed or to allow it to exercise ownership of the property when identified and pointed out. The defendant had a right to lock up its premises and place them in charge of keepers instructed to let nothing be taken away without orders, and the keepers properly referred the plaintiff's representative to the manager. It was not enough that High "could not help hearing" the witness Arnemann when he "sang out."

There was no evidence which justified the finding of the plain-

tiff's conversion of these chattels. In this view a nonsuit ought to have been granted and the instructions asked by the defendant ought to have been given. The first instruction given which was excepted to by the defendant is open to the objection that it assumes that there was evidence of a conversion. The second instruction was favorable to the plaintiff's theory of the case, but perhaps not unduly so. The evidence of value which was ruled out was admissible. Values are particularly subject to evidence of opinions of witnesses who may not be experts, but who "have some knowledge on which to base their opinions." 1 Elliott on Ev., Sec. 685. All the facts on which an opinion might properly be formed in this case concerning the value, two years before, of mouldings and other property after an exposure to weather, could not be laid before the jury in order that it should find the value. *Railroad Co. v. Schultz,* 43 Ohio 270. Nor need the witnesses know all of such facts, as for instance the kind of weather, with reference to rain or shine, and the exact place of the exposure. Their evidence was admissible and its value was to be considered by the jury after such cross-examination as the plaintiff should have seen fit to make.

"It is not necessary, in order to qualify one to give an opinion as to values, that his information should be of such a direct character as would make it competent of itself as primary evidence. It is the experience which he acquires in the ordinary conduct of affairs, and from means of information such as are usually relied on by men engaged in business for the conduct of that business, that qualifies him to testify." *Whitney v. Thacher,* 117 Mass. 523.

The exceptions are sustained, the verdict rendered set aside, the judgment that was entered is vacated and the case is remanded to the circuit court of the first circuit for a new trial.

*Robertson & Wilder* for plaintiff.

*Ballou & Marx* for defendant.