55 U.S. 575
 14 How. 575
 14 L.Ed. 548
 URIAH A. BOYDEN, PLAINTIFF IN ERROR,
v.
EDMUND BURKE.
 December Term, 1852
 
 1
 THIS case was brought up by writ of error from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington.
 
 
 2
 Boyden was a citizen of Massachusetts, and Burke was Commissioner of Patents at the time when the transactions took place which were the subject of the suit.
 
 
 3
 The ground of the action was, that Burke wilfully, maliciously, and corruptly, and with intent to injure Boyden, had refused to give copies of certain patents.
 
 
 4
 The bills of exceptions referred to certain letters, which will be mentioned chronologically.
 
 
 5
 On the 14th December, 1847, Boyden wrote a long letter to Burke, too long to be inserted. The following extract from it will be sufficient:
 
 
 6
 'If, in your letter of August 10, 1847, you mean by the 'office' yourself, or the author of the letters which I have received from you, you prescribe two conditions in said letter which are inconsistent, viz., that may letters to you, or to the author of those letters subscribed by you, should be both respectful and proper. It is improper to treat a person respectfully while it is known that he is unworthy of respect; therefore, it is impossible to comply with your prescriptions. The claim of unworthy office-holders to have people, as they say, respect the offices they hold, while it is known that the incumbents are unworthy of respect, is absurd. Do you mean, when you urge people to respect 'the office,' to have them respect you merely because you hold the office, while it is known that you are unworthy of respect? This is a free country!' &c. &c.
 
 
 7
 On the same day Mr. Boyden wrote to Mr. Greenough, in Washington, as follows:
 
 
 8
 BOSTON, MASS., December 14, 1847.
 
 
 9
 SIR,—Your letter of the 23d ult. was duly received. I wrote to Mr. Burke to-day, criticizing his conduct, and informing him that I wish him to deliver to you a certified copy of each of the following patents, including drawings, specifications, and claims, or of all of them which are recorded in the Patent-Office: George W. Henderson and John E. Cayford's patent, dated April 14, 1830, Charles Kenzie's patent, dated July 1, 1836, and J. K. Millard's patent, dated May 9, 1846.
 
 
 10
 You will oblige by tendering the fees for those copies if he declines furnishing them; and if you obtain them, I wish you to send them by mail to me at Boston. Respectfully,
 
 
 11
 (Signed) URIAH A. BOYDEN.
 
 
 12
 Test: JOHN A. SMITH, Clk.
 
 
 13
 Mr. Greenough, accordingly, called upon Mr. Burke, who declined to cause the copies to be prepared for him, as the agent of Mr. Boyden, and addressed to Mr. Greenough an explanatory letter, from which the following is an extract:
 
 
 14
 'Of these reasons, for declining to cause the copies to be made for him, which you requested, you were duly apprised. And you were also informed, as Mr. Boyden himself has been informed, that, until he comes to the conclusion to treat this office with the civility which the customs and rules of official intercourse require, this office will have no intercourse with him, directly or through the agency of others. When he concludes to conduct his intercourse with this office with decency and propriety, his business will be attended to.'
 
 
 15
 On the 20th of January, 1848, Mr. Burke made the following memorandum, which he handed to Mr. Laskey, who had called for the same papers:
 
 
 16
 PATENT-OFFICE, January 20, 1848.
 
 
 17
 Mr. R. H. Laskey, as the agent of Uriah A. Boyden, calls for the following copies of patents, including drawings, specifications, and claims, or of all of them, which are recorded in the Patent-Office, viz., George W. Henderson and John E. Cayford's patent, dated April 14, 1830; Charles Kenzie's patent, dated July 1, 1846; and J. K. Millard's patent, dated May 9, 1846; for which he officers to pay the usual fees required by law for copies.
 
 
 18
 I hereby refuse to give him the copies called for for Mr. Boyden, or to transact any other business for Mr. Boyden with Mr. Laskey. I do not refuse copies of any patents or other papers which Mr. Laskey requires for himself or for any other person, except Mr. Boyden. I refuse to do any business for Mr. Boyden, whether he applies for the same personally or by agent, until he comes to the conclusion to observe, in his commonications with this office, or its official head, the proprieties usually observed in official intercourse. When he comes to the conclusion to address this office, or its head in respectful language, any business which he may have with it will be done as it is done for other persons, whether he applies in person or by agent.
 
 
 19
 EDMUND BURKE.
 
 
 20
 Mr. Boyden soon afterwards brought his action against Burke, as above stated.
 
 
 21
 On the trial of the cause, the plaintiff's counsel took four bills of exceptions; the first three of which related to evidence, and the fourth an exception to a general instruction, that the plaintiff was not entitled to recover.
 
 They were as follows:
 First Exception.
 
 22
 On the trial of the issue in this cause, the plaintiff, to maintain the issue on his part joined, offered to give evidence tending to show that he is a citizen of the United States, residing in Boston, in the State of Massachusetts; that he is a civil engineer and machinist, and as such was, in the month of January, 1848, engaged in making improvements in 'Turbines' and 'water-wheels;' that this fact was known to the defend ant; that the defendant was at the same time Commissioner of Patents; that the plaintiff, in order to see what machinery having in view the same purpose, had been therefore patented, as well to guard himself against any suit by such previous patentees, for any alleged infringement of their said patents, as also to avoid any infringement thereof, and to save himself time, labor, and expense, required copies of certain patents then of record in the Patent-Office, and which had been theretofore issued to the persons mentioned in the memorandum of January 20th; that, on the 20th day of January, 1848, the said plaintiff applied to the said defendant, as Commissioner of Patents, as aforesaid, for copies of the said patents, and tendered himself ready, and 'offered to pay the usual fees required by law for copies,' and the defendant thereupon, as Commissioner, as aforesaid, answered the said application in writing, as follows.
 
 
 23
 To all which evidence, so as aforesaid offered by the plaintiff, and to every part thereof, except the said memorandum last above mentioned, the defendant by his counsel objects, as inadmissible upon the issue joined, and the court refused to permit the said evidence, so objected to, to be given; and thereupon, the plaintiff, by his counsel, excepts thereto.
 
 Second Exception.
 
 24
 The plaintiff then read in evidence, without objection, the memorandum made by the defendant, dated 20th January, 1848, and then gave evidence tending to show that, on or about the 22d day of December, 1847, J. J. Greenough, by authority of the plaintiff, called at the Patent-Office to obtain for him copies of three several patents, which had therefore been issued by said office for 'Turbines' or 'water-wheels;' that he was referred by the clerk, to whom he applied, to the defendant, and informed defendant, that he had been requested by the plaintiff to obtain for him copies of those patents, and defendant refused, saying he would not have any thing to do with Mr. Boyden, directly or indirectly, or words to that effect; and, upon his cross-examination, witness stated, that he asked Mr. Burke to give him in writing his reasons for so refusing, which he then and there promised to do; and some days after the witness received a letter from the defendant containing those reasons, which letter he had transmitted to the plaintiff; and then, upon cross-examination, the counsel for the defendant called upon the plaintiff to produce said letter, and the plaintiff, admitting he had said letter then in court, refuses to produce the same, on the ground that the said letter, if produced, would not be evidence; but the court, overruling the objection of the defendant, ordered the same to be produced, and thereupon the said letter was produced by the plaintiff; and the defendant, by his counsel, offers to read the same in evidence, and the plaintiff, by his counsel, objects thereto, but the court permits the same to be read in evidence, and it is read accordingly, as follows; and the plaintiff, by his counsel, excepts thereto, &c. &c.
 
 Third Exception.
 
 25
 And here the plaintiff rested; and thereupon the defendant offered to read, in evidence, a letter addressed to him by the plaintiff, dated 14th December, 1847, and also a letter from plaintiff to J. J. Greenough, which it is admitted is the same letter referred to in the testimony of said Greenough, as containing the authority under which he applied for the copies of patents, as testified by him in his examination by the plaintiff, which letter bears date the 14th December, 1847, to the admissibility of which said letters, or either of them, as evidence in this cause, the plaintiff, by his counsel, objects, and the court overrules the said objection, and permits both of said letters to be read in evidence; and the handwriting of the plaintiff thereto being admitted; the same are read accordingly, and the plaintiff, by his counsel, excepts thereto, &c. &c.
 
 Fourth Exception.
 
 26
 And thereupon, and upon the whole evidence aforesaid, the defendant prayed the court to instruct the jury that upon the evidence aforesaid, if the same is believed by the jury, the plaintiff is not entitled to recover in this action; which instruction the court gave, and the plaintiff, by his counsel, excepts thereto, &c. &c.
 
 
 27
 Upon these exceptions, the case came up to this court, and was argued by Mr. Bradley, for the plaintiff in error, and Mr. Coxe, for the defendant in error.
 
 
 28
 Mr. Bradley contended that the Circuit Court erred in each one of the above rulings.
 
 
 29
 First. The defendant was, by law, bound to give the copies asked for, if they could be made consistently with the public interest.
 
 
 30
 1. The Patent Office is for certain purposes an office of public record, in like manner as the office in which the titles to real property are recorded:
 
 
 31
 From the very name; the object; the nature of the contract between the government and the patentee; the effect of the granting the patent as to the right granted; and the notice implied; the manner in which the title is secured, and by which a right under it is to be transferred; the necessity to prevent litigation; to prevent conflicts; to avoid the expenditure of time and money.
 
 
 32
 2. For like reasons, if no provision were made by law for copies, still the keepers of those records should be bound to give them.
 
 
 33
 3. The original statute, and each successive one, made provision for such copies. Act 10th April, 1790, 1 Stat. at Large, 109, § 1, 2, 3; Act 21st February, 1793, Id. 318, § 1, 4, 11; Act 4th July, 1836, 5 Stat. at Large, 118, § 4, 5, 11; Act 3d March, 1837, Id. 191, § 1, 2, 12; Act 3d March, 1839, Id. 353, § 2, 8; Act 29th August, 1842, Id. 542, § 2, 6.
 
 
 34
 The law, in terms, provides copies in cases in which they are to be used as evidence, and makes them evidence. It does not stop here, but directs copies of the records, drawing, and other papers deposited in the office, to be given to any person making application for them, on their paying certain fees therefor.
 
 
 35
 It requires a record of the claim, specification, drawings, the patent therefor, and the assignment thereof. It imposes heavy penalties upon an infringement of the patent, and makes these records notice of the particulars of the right granted.
 
 
 36
 Its design, in authorizing copies to every person applying for them, is obvious; that is, protection against the danger of incurring these penalties. The reason for requiring copies in such cases, is obviously the same at that which requires them to be given in cases of contest. Prevention is often better than redress.
 
 
 37
 Second. The duty was purely ministerial, involving no discretion; and it will be further contended——
 
 
 38
 1. The general proposition, that, for a refusal by a public officer to do a mere ministerial act, to the injury of another's right, an action will lie.
 
 
 39
 2. The injury is to be compensated in damages, and if the officer has acted in good faith, the measure of damages is the actual injury sustained; if he has acted wilfully, maliciously, corruptly, or by color of his office, with intent to injure, the party injured will be entitled to recover such damages as the jury may see fit to give.
 
 
 40
 As to the first branch of this second point, Tracy & Ballestier v. Swartwout, 10 Pet. 80; 9 How. 259.
 
 
 41
 As to the second branch, Huckle v. Money, 2 Wils. 205; Beardmore v. Carrington, Id. 244; Dinsman v. Wilkes, 12 How. 401-406; Day v. Woodworth, 13 How. 371.
 
 
 42
 Third. Evidence is admissible, in this last case, to show that the officer knew the nature of the injury he was inflicting, and therefore it was competent for the plaintiff to give in evidence the facts stated in plaintiff's bill of exceptions, not as indicating a measure of damages, but to give the jury some knowledge of the nature, character, and degree of the injury, as a guide in forming an estimate of the extent to which they might rightfully go in inflicting punitive as well as compensatory damages. Marest v. Harvey, 5 Taunt. 442; Woert v. Jenkins, 14 Johns. 352; Whipple v. Walpole, 10 N. H. Rep. 130; Wallace, Jr. R. 164; and cases under second point.
 
 
 43
 Fourth. The letter written by the defendant to Mr. Greenough, set out in the 2d bill of exceptions, was not evidence for any purpose.
 
 
 44
 1. Mr. Greenough had no authority to require it.
 
 
 45
 2. It was but an amplification of his first refusal, and not explanatory of it.
 
 
 46
 3. It was the party's own letter, offered in evidence by himself, not originally called for by plaintiff, and not in any manner admitted or acquiesced in by him. Farlie v. Denton, 3 C. & P. 103; 14 E. C. L. R. 227, 228; Healey v. Thatcher, 8 C. & P. 338; 34 E. C. L. R. 442; Whitford v. Buckmeyer & Adams, 1 Gill, 127, 140; Van Buren v. Digges, 11 How. 461, 477; Towle v. Stevenson, 1 Johns. Ca. 112; Champlin v. Tilley, 3 Day, 306; Antoine v. Coit, 2 Hall, N. Y. 40, 46. 47.
 
 
 47
 Fifth. The letter to the defendant, set out in the 3d bill of exceptions, was not evidence for the defendant for any purpose. The letter from the plaintiff to Mr. Greenough was admissible to show his authority from the plaintiff, and shows conclusively that he had no authority to ask for or to receive defendant's written statement, set out in the 2d exception.
 
 
 48
 But the letter written by plaintiff to defendant, on the 14th December, 1847, was not evidence in mitigation of his refusal on the 22d December, 1847, on the 2d January, 1848; and it could have been admissible for no other purpose.
 
 
 49
 That letter would have reached here on the 18th December, 1847, at furthest, by due course of mail, and the defendant had abundant time to get cool before the 22d of that month.
 
 
 50
 The refusals were both given deliberately, wilfully, with the intent to punish, that is, to injure the plaintiff, and the malice is so much the greater.
 
 
 51
 Mr. Coxe, for the defendant in error, made the following points:
 
 
 52
 1. That the Circuit Court ruled according to law on all the points raised in the bills of exception.
 
 
 53
 2. That the action is founded upon a misconception of the 4th section of the act of Congress of July 4th, 1836.
 
 
 54
 3. That if the plaintiff's case is embraced by that section, the evidence in the record furnishes a complete justification of the acts of defendant.
 
 
 55
 4. That the declaration sets forth no legal cause of action.
 
 
 56
 Mr. Justice GRIER delivered the opinion of the court.
 
 
 57
 The bills of exception, taken by the plaintiff to the rejection and admission of testimony on the trial, have not been supported.
 
 
 58
 The declaration charges, that the defendant, Burke, was Commissioner of Patents, and as such was bound to grant to applicants therefor, copies of patents, &c., on payment of fees. That the plaintiff tendered the customary fees and demanded copies of certain patents, which defendant refused to give him, to the damage of plaintiff, $10,000, &c.
 
 
 59
 As no special damage is alleged, the court very properly, refuse to receive evidence tending to prove it.
 
 
 60
 A demand for certain copies was made through the agency of Mr. Greenough, but accompanied with a letter from plaintiff to defendant, requesting him to deliver the copies to Mr. Greenough. This letter, with the answer of defendant thereto, was properly received as part of the res gestoe, or as a conversation between the parties, reduced to writing.
 
 
 61
 A bill of exceptions was also taken to the charge of the court, who instructed the jury, 'that, upon the evidence before them, the plaintiff was not entitled to recover.'
 
 
 62
 As the plaintiff had shown a demand of the copies, with tender of fees, and a refusal of defendant, he had made out his case as laid in his declaration, and was entitled to a verdict for nominal damages, unless by law he was not entitled to demand such copies, or defendant had shown a sufficient excuse for refusing them. Patents are public records. All persons are bound to take notice of their contents, and consequently should have a right to obtain copies of them. The patent law of 1836, § 4, enacts that 'any person making application therefor may have certified copies,' &c. These records being in the care and custody of the Commissioner of Patents, it is his duty to give authenticated copies to any person who shall demand the same, as soon as he conveniently can, on payment of the legal fees. Where there is a right on the one side, and a corresponding duty imposed on the other, a refusal to perform such duty, on the reasonable request of the party entitled to demand it, will subject the officer to an action. But the party entitled to such services must request it in a proper manner. He has no right to accompany his demand with personal insult, or vulgar abuse of the officer. Those to whom the people have committed high trusts, are entitled at least to common courtesy, and are not bound to submit to the insolence or ill temper of those who disregard the decencies of social intercourse. A demand, accompanied with rudeness and insult, is not a legal demand. The letter, accompanying the plaintiff's demand in this case, was taunting, insulting, and libellous, indicating a want of taste and temper. And if the case had rested here, we could have found no fault with the instruction of the court. But the plaintiff showed another demand, some two weeks after the first, by his agent, which was made in a proper manner, and unaccompanied with any insulting missive. The defendant was not justified in refusing this demand on account of the former misconduct of the plaintiff, or to enforce an apology by withholding his rights. Ill manners or bad temper do not work a forfeiture of men's civil rights. While the want of an apology for his previous rudeness and insult might well justify the defendant in refusing all social intercourse with the plaintiff, yet it could not release him from the obligations imposed upon him by his official station, or entitle him to disregard the rights guaranteed to the plaintiff by the laws of the land.
 
 
 63
 The court below erred, therefore, in not instructing the jury that if they believed the testimony, the plaintiff was entitled to a verdict for nominal damages.
 
 
 64
 The judgment is reversed, and a venire de novo awarded.
 
 Order.
 
 65
 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court that the judgment of the said Circuit Court, in this cause be, and the same is hereby, reversed with costs; and that this cause be, and the same is hereby, remanded to the said Circuit Court with directions to award a venire facias de novo.