### SHUBERT et al. v. ROSENBERGER.

(Circuit Court of Appeals, Eighth Circuit. March 4, 1913.)

No. 3,635.

1. COMPROMISE AND SETTLEMENT (§ 13*)—CONTRACT—CONSTRUCTION—"NOW."

Plaintiff having a claim against defendants for attorney's services, they met in Chicago, where neither lived, and orally agreed on an ad- justment. After each had returned home, plaintiff wrote defendants a memorandum of the agreement, reciting that defendants ·were to pay him "now" for his services a balance of $5,000, of which $400 had been received from court costs, etc., leaving a balance due plaintiff of $4,600; defendants to save plaintiff harmless on account of a claim of another to one-third of the fees, etc. Held, that the word "now" ordinarily means at ·the present point of time, at this juncture, and in a writing means contemporaneously with the execution thereof, but under the circumstances of the parties meant that defendants should remit the balance to plaintiff, on their return home, by due course of mail.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. § 70; Dec. Dig. § 13.*

For other definitions, see Words and Phrases, vol. 5, pp. 4851–4853.]

2. COMPROMISE AND SETTLEMENT (§ 20*)—PERFORMANCE—EXCESSIVE DEMAND.

Where an agreement compromising an attorney's claim for services had been entered into, but the amount fixed had not been paid, the at- torney's subsequent demand for something more than the balance he was entitled to did not justify defendants in refusing to pay what was due.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 83–88; Dec. Dig. § 20.*]

3. COMPROMISE AND SETTLEMENT (§ 5*)—AGREEMENT—CORRESPONDENCE.

Where an agreement liquidating plaintiff's claim for attorney's services did not contemplate that it should be reduced to writing, and no writing was ever prepared and signed by both parties, and plaintiff's letter to defendants, containing·his version of the result of their conference, was not replied to, but defendants afterwards wrote insisting on different re- quirements, there was no contract of settlement in writing.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 10–16; Dec. Dig. § 5.*]

4. TRIAL (§ 136*)—QUESTIONS FOR COURT OR JURY—MEANING OF WORDS.

The meaning of a common word not depending on trade or local usage or intrinsic facts′ is for the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 318, 320, 321, 323– 327; Dec. Dig. § 136.*]

5. COMPROMISE AND SETTLEMENT (§ 20*)—FAILURE TO PERFORM—ACTION ON ORIGINAL CLAIM—TENDER.

Plaintiff having an unliquidated claim for attorney's fees against defendants, it was agreed that it should be settled by an immediate

---

: *For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

payment of the balance of $5,000, amounting to $4,600. Defendants, after making the agreement, insisted that the amount agreed on was not payable absolutely, but that plaintiff was required to make collections from litigation in which he had been employed and apply the same on his fees. This plaintiff refused to do, and having received $2,500 of the amount agreed on applied it as a partial payment and sued for the value of his services, without reference to compromise. *Held*, that defendants having broken the compromise agreement, plaintiff was not required to return or tender the amount received thereunder as a condition to his right to sue for the value of his services.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 83–88; Dec. Dig. § 20.*]

In Error to the Circuit Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action by J. C. Rosenberger against Lee Shubert and another. Judgment for plaintiff, and defendants bring error. Affirmed.

See, also, 182 Fed. 411.

Frank Hagerman, of Kansas City, Mo. (Kimbrough Stone, of Kansas City, Mo., on the brief), for plaintiffs in error.

Clyde Taylor, of Kansas City, Mo. (A. N. Gossett, of Kansas City, Mo., on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and WILLARD, District Judge.

HOOK, Circuit Judge. J. C. Rosenberger, an attorney at law, sued Lee and Jacob Shubert for professional services and recovered judgment. By this writ of error the defendants complain only of rulings of the trial court in respect of their defense that a binding compromise and settlement was made before the action was begun.

[1] After the dispute over the amount of the fee arose, the plaintiff and Jacob Shubert, one of the defendants, met in Chicago and agreed upon an adjustment. Shubert left for New York the same day, and plaintiff at once wrote him a letter, June 5, 1909, in which he said:

"Am writing this as a memorandum of our agreement of settlement of to-day. You to pay me now for my services in the Woodward case a balance of $5,000.00 of which $400.00 (exact amount $399.00) has already been received by me in the shape of court costs in Appellate Court and paid by Woodward, leaving net balance due me $4,600.00. * * * You to save me harmless on account of the claim heretofore asserted by Mr. Klein to ⅓ of my fees. This is, of course, in full of all services in the Woodward case if the litigation is ended in accordance with the releases and stipulations signed by you to-day which seems certain."

The fee of another attorney was also involved, and was referred to in the letter, but it is not of importance in the present litigation. Shubert made no reply to the letter, but plaintiff having wired him, June 14th, that "our understanding at Chicago was based on immediate cash," he wired in reply that he had been out of the city; and on the 16th he wrote, inclosing a check for $2,500, and said:

"This is a bad time of the year to arrange for this sort of thing, as everything is closed up and all our rents are due. I will send you the balance very shortly. Please make collections of whatever you can from Woodward, and you can credit the amount to your account, also the $300 tied up in Omaha."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Plaintiff cashed the check and kept the money. On June 21st he wrote Shubert, acknowledging receipt of the $2,500, but said it was not accepted as in compliance with their agreement. He referred Shubert to his letter of the 5th and said the agreement was to pay "now"; that he would not have agreed to accept $4,600 on any other condition than immediate payment; that he would extend the time of payment to July 1st, and if by that time defendants sent him the further sum of $2,100 (making the $4,600), and would also write him by return mail that he agreed to all the terms of the letter of June 5th, he might consider the matter settled; otherwise he (plaintiff) would look to him for the full value of his services. June 24th Shubert replied, saying plaintiff's letter of the 21st contained a glaring misstatement of the facts; that it was not understood at the interview of June 5th that the money was to be paid at once, but that money was to be collected from the litigation and credited on the account; also that the amount of the fee charged was outrageous and exorbitant, and that he would be more than pleased to let the matter go to the courts. Plaintiff then sued for the value of his services, less payments received, in which he included the $2,500 sent by Shubert's letter of the 16th of June. The verdict and judgment were for about $1,300 more than the amount agreed upon in Chicago, of which excess about $500 was for interest. As already indicated, the only defense with which we are concerned was that the claim had been settled, released, and discharged.

[2] It became necessary at the trial to determine whether the Chicago agreement was still in force or, on the other hand, had been broken or repudiated by defendants, and to do that it was necessary to know its terms. Counsel for defendants say the agreement was in a writing which spoke for itself, meaning plaintiff's letter of June 5th, and they complain that the court erred in instructing the jury that they might consider the conversations at the Chicago conference, of which evidence had been admitted. If the letter of June 5th were the agreed repository of the contract terms, then it is clear that defendants promised to pay the $4,600 "*now.*" Ordinarily "now" means at the present point of time; at the present time; at this juncture. Century Dictionary; Chapman v. Holmes, 10 N. J. Law, 24, 31. In a writing it means contemporaneously with the making or execution. Chouteau v. Barlow, 110 U. S. 238, 262, 3 Sup. Ct. 620, 28 L. Ed. 132; Pike v. Kennedy, 15 Or. 420, 15 Pac. 637. In the present circumstances, both parties being away from home, turning time or grace was doubtless intended so Shubert might, upon his return to New York, remit by due course of mail. Counsel for defendants contend the word meant "upon demand" at the most. But even that would not help them, because plaintiff's telegram and letter of June 14th and 21st were each equivalent to a demand, and Jacob Shubert's reply of the 24th was a refusal and repudiation. True the plaintiff demanded by his letter of June 21st something more than payment of the balance by the 1st of July, but if he was not entitled to it the excess did not justify defendants in refusing to pay what was due. Colby v. Reed, 99 U. S. 560, 25 L. Ed. 484. The letter was not in tem-

perate, respectful terms, and standing alone may possibly, for that reason, have failed as a demand (Boyden v. Burke, 14 How. 575, 582, 14 L. Ed. 548); but we are not prepared to say it was out of harmony with their prior mutual attitude. It is also to be noted that by Jacob Shubert's letter of June 24th the position was taken that plaintiff must collect from the litigation in which he had been employed and apply on his fees. This was not consistent with a duty to pay now or on demand.

[3] In truth, however, the contract was not in writing, and the court properly admitted evidence of what was said and done at Chicago. At no time was it mutually understood that their agreement should be reduced to writing, and no writing was ever prepared and signed by both. Had defendants replied to plaintiff's letter of June 5th accepting his version of the result of the conference, it might be said the two letters made a contract; but they did not do so, and as they did not commit themselves they were not in a position to claim at the trial that plaintiff's letter had that effect. It was, as part of the correspondence, evidential and nothing more. Again, defendants did not at the trial accept the letter as an accurate recital, but, on the contrary, contended that payment "now" was not a part of the agreement. Both parties admitted the other terms, but that one was the point of controversy, and for the jury upon the evidence of what occurred.

[4] The trial court also allowed the jury to determine what the word "now" meant. As its controlling meaning did not depend upon a trade or local usage or extrinsic facts and circumstances, that question was for the court, not the jury (West v. Smith, 101 U. S. 263, 270, 25 L. Ed. 809); but as the decision was what the court's should have been no prejudice resulted. Randon v. Toby, 11 How. 493, 13 L. Ed. 784. In the case last cited it appeared that the decision of the jury upon the construction of a written instrument was right, and also that the submission to the jury was at the request of the party who afterwards complained; but each reason for denying his complaint was independently sufficient.

[5] We therefore have an agreement that a disputed, unliquidated claim in contract shall be fully extinguished by payment at a fixed time of a sum less than plaintiff, and more than defendants, held as owing, a partial payment thereon by defendants, a failure to pay the balance as agreed, and an action upon the original claim by plaintiff, who did not return or tender, but gave credit for, the partial payment. The plaintiff contends the agreement was an accord; the defendants contend that it was a compromise and governed by different principles with respect to the right to rescind and the duty to tender back what had been received. It is claimed for defendants that an accord applies only to liquidated claims where the liability and amount are not in substantial dispute. But from a very early day the use of the term has been much broader. Adams v. Tapling, 4 Mod. 88, decided in 1691, was an action on covenant; the breaches assigned being that the houses were not in repair, the locks were taken away, the hedges

were broken down, and the ditches were unscoured. Obviously the damages were unliquidated. The court said:

"In covenant where the damages are uncertain and to be recovered as in this case, a lesser thing may be done in satisfaction, and there 'accord and satisfaction' is a good plea."

There has generally been an interchangeable use of the terms "accord and satisfaction" and "compromise and settlement" as to controversies over liquidated and unliquidated claims arising from contracts express and implied. Both terms were applied to the same situation in City of San Juan v. Gas Co., 195 U. S. 510, 521, 523, 25 Sup. Ct. 108, 49 L. Ed. 299, 1 Ann. Cas. 796. But if there is a distinction in the application of the terms it is not important. here, for the general rule is that to be a defense to the original claim an accord must be followed by satisfaction and a compromise by settlement. First Nat. Bank v. Leech, 36 C. C. A. 262, 94 Fed. 310; Brown v. Spofford, 95 U. S. 474, 24 L. Ed. 508; Barkley v. Clark, 43 Kan. 43, 22 Pac. 1025. In the first of these cases this court said:

"It is not enough that there be a clear agreement or accord and a sufficient consideration; but the agreement or accord must be executed before it can be pleaded as an accord and satisfaction. If part of the consideration agreed on be not performed, the whole accord fails."

The breach may be by failure to pay on a day fixed. Early v. Rogers, 16 How. 599, 14 L. Ed. 1074. There are cases in which it appears that the parties intended the new agreement should per se extinguish the old one, where the promise embodied in the accord or compromise was accepted regardless of its fulfillment. There a novation occurs, and the action must be upon the substituted agreement. The case at bar, however, is not of that character.

To maintain his action the plaintiff was not required to tender defendants the money they paid on the new agreement. He did not sue to rescind the agreement, nor had he broken its terms. Had he been trying to escape it, a return of what he received might have been necessary; but his action was on his original demand, and the agreement of accord or compromise was by way of defense. It was plaintiff's right to regard it as having been repudiated by defendants, and to credit their payment. The defendants alone being in default were in no position to ask relief from their wrong by restoration of the status quo.

The judgment is affirmed.