GOLDIN v. R. J. REYNOLDS TO-BACCO CO.

District Court, S. D. New York.
Jan. 25, 1938.

Jacob L. Steisel, of New York City, for plaintiff.

Cooper, Kerr & Dunham, of New York City (Drury W. Cooper and Thomas J. Byrne, both of New York City, of counsel), for defendant.

LEIBELL, District Judge.

This is a suit in equity for unfair competition. The plaintiff is a magician and the inventor of a theatrical illusion known as "Sawing a Woman in Half." The defendant is the R. J. Reynolds Tobacco Company, manufacturer of "Camel" cigarettes.

The plaintiff charges the defendant with acts of unfair competition for which he seeks an injunction and damages.

The complaint verified March 15, 1933, alleges that plaintiff has for thirty-five years been engaged in the theatrical profession, presenting to the public productions known as illusions and magic; that in or about 1908 he conceived a novel and extraordinary illusion by means of which a human being appeared to be severed into two parts; that in and after 1911 he presented the illusion in theatrical performances throughout the word under the name of "Sawing a Woman in Two" and similar titles; that he has spent much money, time and effort in perfecting and advertising this illusion; that in the illusion as conceived by him a woman is placed within an oblong box, with head, hands, and feet protruding, and the box sawed in half, the woman apparently being severed into two parts; that the public has been unable to determine the method by which the illusion is created and the same has therefore been in great demand.

The complaint further alleges that the defendant in the course of the sale of its products has entered upon an advertising campaign in newspapers, and posters where-in there are displayed various theatrical illusions as well as an exposé of the method by which such illusions are created; that in said advertising campaign the defendant has displayed an advertisement entitled "Sawing a Woman in Half," which attempts to portray plaintiff's illusion; that such advertisement displays a stage performance wherein are shown a professional magician, two assistants holding a large cross-cut saw and an oblong box from which protrude the head, hands, and feet of a woman apparently severed into two parts; that the advertisement further displays what purports to be an "explanation" of the method by which the illusion is effected; that the publication and distribution of defendant's advertisements and posters are destroying the value of plaintiff's illusion and will render it impossible for plaintiff to procure future bookings in the United States and Europe where the advertisements are published; that unless defendant is restrained from so advertising its product plaintiff will suffer irreparable damage. The plaintiff therefore demands judgment for $50,000 in damages, and prays that the defendant be restrained as aforesaid.

In its answer served April 10, 1933, the defendant admits that within the calendar year 1933 it has advertised in the manner of which the plaintiff complains in connection with the sale of its product "Camel Cigarettes," but asserts that the information contained in such advertisements was fairly and honestly obtained; that certain information concerning the illusion "Sawing a Woman in Half" was obtained from a book by W. B. Gibson, published in 1927, entitled "The Book of Secrets, Miracles Ancient and Modern"—"Easy Magic You Can Do," wherein the trick or illusion, "Sawing a Woman in Half," is described and disclosed to the public to whom the book was offered for sale; that defendant has therefore the full and complete right to use in lawful manner the information contained therein. Defendant further avers that the plaintiff is patentee of letters patent granted June 12, 1923, for an "Illusion Device," where plaintiff's illusion is voluntarily described and disclosed to the public without any claim of right thereto being made therein; that such disclosure is a dedication of the trick or illusion to the public and that plaintiff's rights are now limited by the patent grant to the exclusive manufacture, sale, or use of the device claimed in the patent for practicing the said trick or

illusion. Defendant therefore denies that it has violated any right of the plaintiff or that plaintiff is entitled to damages, and asks that the complaint be dismissed.

The plaintiff did not testify in support of his own case. He has been absent in Europe since 1928 or 1929. His cause was prosecuted by his attorney in fact under a power of attorney executed by plaintiff in 1922 which authorizes said attorney "to commence and prosecute any and all claims, suits or demands, whether in law or in equity, against any person, firm, or corporation, for infringement of my rights in and to the act known as 'Sawing a Lady in Half, etc.'" During his absence abroad the plaintiff has of course made no personal effort to book his act in America. Such efforts, if any, have been confined to plaintiff's attorney in fact. The witness' testimony as to such efforts is at best vague and indefinite.

At or about the time defendant introduced to the public the advertisement complained of, it appears that only two magicians were employing the trick or illusion in America with permission of the plaintiff. One of these exhibited it occasionally for charity and without payment to the plaintiff; the other was licensed to use plaintiff's patented device for a consideration. The evidence does not show with any degree of definiteness that the other discontinued the act because of the defendant's advertisement. In fact, the contrary appears; i. e. that this other magician did continue to perform the act in question even after the advertisement was published. Aside and apart from any other consideration, the plaintiff has failed to show any loss or damage as a direct result of defendant's acts. Assuming, therefore, that plaintiff did have the exclusive right to possess the trick or illusion in question, no actual damage is shown to have resulted from the alleged disclosure of this trick or illusion by the defendant.

Now what has the defendant done? It has caused to be published a pictorial advertisement for "Camel Cigarettes" portraying a stage performance in which it appears that a professional magician has just succeeded in sawing a woman in half. Upon a raised platform on the stage an oblong box has apparently been severed into two parts. From one-half of the box the head and hands of a woman protrude. From the other half a woman's feet protrude. The picture is entitled "Sawing a Woman in Half." Beneath the picture appears the words "It's Fun To be Fooled * * * It's More Fun To Know." To the left of these last-mentioned words and beneath the picture the word "Illusion" appears. Beneath the word "Illusion" in fine print appears the following: "A large packing case is exhibited on a raised platform. A young woman climbs into the box. Head, hands and feet protrude, and are held by spectators while the magician takes a cross-cut saw and, with the help of an assistant saws through the center of the box and apparently through the woman." Below the fine print and in large type of the same size as the word "Illusion" is found the word "Explanation." Beneath the word "Explanation" in fine print there follows: "One method of performing this illusion requires the presence of two girls in the box. One girl curls up in the left half of the box with her head and hands protruding. The other girl is doubled up in the right half of the box with only her feet showing. Nobody is sawed in half." Beneath the so-called "Explanation" is a picture of a pack of "Camel Cigarettes." The advertisement also contains among other things the following: "Cigarette advertising, too, has its tricks. Consider the illusion that 'Flavor' can be achieved by some kind of magical hocus-pocus in manufacturing cigarettes. Explanation: Just three factors control the flavor of a cigarette. The addition of artificial flavoring. The blending of various tobaccos. And the quality of the tobaccos themselves. Quality is by far the most important."

▪ The name of the plaintiff does not appear in the advertisement. The technical details of the performance of the trick or illusion are nowhere disclosed. Plaintiff's patented device is not described. Apart from the fact that the so-called "Explanation" states that one method of performing this illusion requires the presence of two girls in the box, one at either end, there is no disclosure. Certainly no one in the audience is naive enough to believe that the subject is actually severed into two parts, especially when the magician walks between the two halves of the box after the apparent severing, as the testimony discloses. The average person would know that one way of performing the illusion would be to use two girls. To put this fact in print under the word "Explanation" is

but to state the obvious. There is therefore in my opinion no disclosure of any unknown or unascertainable fact. In my judgment it cannot be seriously maintained that the fine print beneath the word "Explanation" appearing in the advertisement is really such a disclosure as would destroy the value of plaintiff's illusion, assuming that plaintiff does have the sole and exclusive right to the performance, display and control of the trick. · On those facts alone plaintiff's claim cannot be sustained.

. In addition, testimony adduced at the trial shows that the plaintiff obtained a patent, No. 1,458,575, in the United States Patent Office, on June 12, 1923, for an illusion device, nearly ten years before defendant's advertisements were published. On pages 1 and 2 of the specification of the patent appears the following: "In the operation of the device, preparatory to the exhibition, a person is concealed in the lower box 1. The covers 8 are thrown open and the panels 10 and 15 removed. A second person may now be lowered in the box in sight of the audience, his or her head projecting from the opening 14 and his feet from the openings 16. As part of the stage business, the demonstrator may pretend to hypnotize this person before lowering him into the upper box, explaining to the audience that nothing that may happen to him can hurt him in this condition. The panel 10 is then slid down into position and the person's arms put through the openings 11; and, for better effect, they may be held out by an assistant to the operator performing the trick. The panel 15 is also inserted, and the covers 8 are closed and locked by the locks 9. As soon as the covers 8 are lowered, the person in the upper box, while that end of the box is away from the audience, draws his feet from the openings 16, back onto the foot rests 26, so that this person is entirely in the right-hand box section. The first person concealed in the lower box then pushes his feet through the two sets of doors 3 and 6 and puts them in the place of those of the first person. Prior to this substitution the upper box can be lifted in its entirety, with the second person therein, to make it appear that there is no deception."

Certainly this is a clear and detailed exposé of the secret to the public by the plaintiff himself. Any one who cares to can rightfully and lawfully procure a copy of said patent, containing a full detailed and diagramed explanation of the trick, upon request made to the United States Patent Office.

Furthermore, the claims which the plaintiff makes in his patent are all limited to an "Illusion Device." He claims a monopoly only on the apparatus for performing the trick. He could make no exclusive claim to the illusion itself. Fearful that some one might honestly and lawfully discover the manner or method by which he created the illusion and then lawfully duplicate his apparatus and lawfully perform his trick the plaintiff has sought protection under the statute for what he could protect; namely, the apparatus. To this he has been granted an exclusive monopoly.

Defendant has made no use of plaintiff's patented apparatus. It has merely pictured in connection with and as a part of its advertisement an ordinary oblong box cut into two parts. The interior or the structure of the box is not shown or explained.

The testimony further shows that the illusion of "Sawing a Woman in Half" was published, pictured and explained in 1927 in a book by one Gibson, a witness at the trial. This was more than five years before the appearance of defendant's advertisement. The picture in defendant's advertisement does not differ materially from the picture in Gibson's book. Only one girl, however, is used in the version of the illusion employed in Gibson's book. The trick was also disclosed in magicians' publications at various times prior to the publication of defendant's advertisements.

Plaintiff is attempting in this suit to protect what he mistakenly claims to be his sole and exclusive secret. He maintains that he has a property right in the secret, and that it cannot be taken from him and used ·by another to the other's advantage and to his detriment. Plaintiff claims that his discovery is in the nature of a trade secret, and, as such, it is entitled to protection. It is undoubtedly true that trade secrets have been recognized as property rights from a comparatively early date, but closer examination of the cases dealing with the protection afforded trade secrets shows that there was some trust contract or confidential relationship between the party claiming the exclusive right to the secret and the party sought to be enjoined from making use of such secret, or between the party seeking the injunction and a person

from whom the defendant improperly obtained knowledge of the trade secret. Nims-Unfair Competition and Trade Marks, Third Edition, p. 403; Harrison v. Glucose Sugar Refining Co., 7 Cir., 116 F. 304, 311, 58 L.R.A. 915; Kaumagraph Co. v. Stampagraph Co., 235 N.Y. 1, 7, 138 N.E. 485.

It must be remembered that the "secret process or formula or whatever else the secret may consist of, ceases to be treated as a 'property right' as soon as a third party, through his own efforts, or investigation or through any other fair means obtains knowledge of the other's secret," and that "an honest discovery and knowledge of a secret formula or any other trade secret may justify its use in trade even though the business of another, who had discovered and used it previously, is injured thereby." Derenberg-Trade Mark Protection and Unfair Trading, pp. 119, 125, 126.

The plaintiff and the defendant are total strangers to each other. Prior to the commencement of this suit they had no business contacts. The parties are engaged in entirely different endeavors. They in no way come into competition with each other. No trust, employer-employee, contract, or confidential relationship is shown to exist, nor is it shown that defendant, improperly, unlawfully, or illicitly procured the secret of the illusion from plaintiff's possession.

Having elected to rely upon monopoly by procuring a patent on "An Illusion Device," plaintiff abandoned his secret to the public. Having patented his apparatus for performing the illusion, he published the secret of the illusion. That which up to the time of the issuance of the patent was a secret ceased to be such upon the granting of the patent, for the patent is itself a publication of the secret.

As was stated in Boyden v. Burke, 14 How. 575, at page 582, 14 L.Ed. 548: "Patents are public records. All persons are bound to take notice of their contents, and consequently should have a right to obtain copies of them."

Even assuming, therefore, that the defendant did disclose the secret of the illusion in the advertisement complained of, it did not reveal to the public any thing or any fact of which the public was not already deemed to have knowledge.

I am of the opinion that the plaintiff cannot succeed either on the law or on the facts, and therefore that the complaint should be dismissed. This opinion shall serve as the court's findings of fact and conclusions of law required by Equity Rule 70½, 28 U.S.C.A. following section 723. Submit a decree accordingly.